576 A.2d 1146

**UNIVERSITY LINCOLN MERCURY, INC., Petitioner,**

v.

**COMMONWEALTH of Pennsylvania, PENNSYLVANIA BOARD OF VEHICLE MANUFACTURERS, DEALERS AND SALESPERSONS, Respondents.**

Commonwealth Court of Pennsylvania.

Argued March 5, 1990.

Decided April 10, 1990.

As Modified on Grant of Motion for Clarification May 7, 1990.

Publication Ordered June 8, 1990.

Edward G. Rendell, with him, Denise L. Carroll, Mesirov, Gelman, Jaffe, Cramer & Jamieson, Philadelphia, for petitioner.

April L. McClaine, Counsel, State Board of Vehicle Manufacturers, dealers and Salespersons, with her, Joyce McKeever, Chief Counsel, Bureau of Professional and Occupational Affairs, and Pamella J. Raison, Chief Counsel, for Department of State, for respondent.

Robert E. Kelly, Jr., Duane, Morris & Heckscher, Harrisburg, for intervenor, Ford Motor Co.

Before DOYLE and SMITH, J.J., BARRY, Senior Judge.

DOYLE, Judge.

Before us for consideration is a petition for review filed by University Lincoln Mercury, Inc. (University) from an order of the State Board of Vehicle Manufacturers, Dealers and Salespersons (Board) which granted Ford Motor Company's (Ford) motion to dismiss University's franchise termination appeal. The Board's order also referred to its prosecuting attorney for investigation University's complaint that Ford unreasonably withheld consent to the sale of the franchise to a particular buyer.

The genesis of this case was Ford's January 30, 1989 notice of termination of its franchise agreement with University which provided as reasons for the termination that University (1) submitted false and fraudulent warranty claims, (2) engaged in conduct unbecoming a reputable

businessman, and (3) engaged in conduct which adversely affects the good name and reputation of Ford and other Ford dealers. Pursuant to Section 18(b) of the agreement University appealed to Ford's Policy Board. Following a hearing, the Policy Board by letter dated June 19, 1989 notified University that the notice of termination was affirmed, and that termination would be effective seven days after University's receipt of that notice.

University petitioned the State Board for a hearing on June 26, 1989 and alleged that Ford had violated Section 9(c) of the Board of Vehicles Act[1] (Act) by seeking to "unfairly, without due regard to the equities to [University] and without just provocation, terminate the franchise." University further alleged that Ford, by its conduct after the notice of termination, violated Section 9(b)(3) of the Act, 63 P.S. § 818.9(b)(3). The Board issued an order on June 28, 1989 which notified Ford that University had filed a timely appeal from termination and advised both parties that a stay of termination had commenced pursuant to Section 9(c) of the Act upon the appeal being filed.

Thereafter, on July 24, 1989 Ford filed a statement of facts in support of termination which set forth the same four reasons for the franchise termination as in its original notice to University. Along with its statement of facts, Ford filed a motion to dismiss University's appeal on the ground that University was not a licensed "dealer" and thus lacked standing to appeal a franchise termination decision to the Board, and that the Board therefore lacked jurisdiction to hear such an appeal from an unlicensed entity. When University failed to respond to the motion to dismiss within the administratively-prescribed time period,[2] Ford, on August 8, 1989, filed a motion to deem its motion to dismiss unopposed.

1. Act of December 22, 1983, P.L. 306, *as amended,* 63 P.S. §§ 818.9(c).

2. Section 35.179 of the General Rules of Administrative Practice and Procedure, 1 Pa.Code § 35.179, provides that any motion must be answered or objected to within ten days unless a different period of time is fixed by the agency or the hearing officer.

University eventually filed a response to Ford's motion to dismiss on August 11, 1989 which, despite being untimely, was considered by the Board. In its response, University did not dispute that it was not a licensed dealer in the Commonwealth, but contended instead that because it had alleged that Ford unreasonably withheld consent to the franchise sale, and because such an allegation against a licensee (Ford) could be made by any *person*, it had thereby invoked the Board's authorization to investigate and impose appropriate administrative discipline under Section 4 of the Act, 63 P.S. § 818.4. For this reason, University claimed that the Board was invested with jurisdiction over the subject matter of the entire action. University further alleged that Ford's withholding of financing from University, its refusal to honor University's tender of a certified check for the purchase of vehicles, and its removal of University's new vehicle inventory in the fall of 1988 all served to prevent University from operating as a new car dealership thereby excusing University from renewing its license as a new car dealer.

Ford filed a reply and new matter to University's response on August 16, 1989 in which it presented documentary evidence that all of University's allegations with respect to financing, and the purchase and removal of vehicles, referred not to Ford, but to Ford Motor Credit Company (FMCC), a separate corporation licensed by the Pennsylvania Department of Banking. Ford further alleged that University, because of its unlicensed status, must be precluded from demanding a private hearing with respect to any disciplinary action against Ford, and that such allegations of wrongdoing which would invoke the Board's disciplinary power were not related to the issues involved in an appeal of a notice of termination under Section 9(c) of the Act.

University filed a response in which it admitted that FMCC is an entity separately regulated by the Pennsylvania Department of Banking, but alleged that FMCC's actions as an affiliate of Ford precipitated Ford's notice of

termination. This, University argued, invested the Board with jurisdiction to review FMCC lending decisions which allegedly put University out of business. University further alleged that Ford's refusal to consent to a particular buyer of University's business was wrongdoing related to Ford's termination, and that because the Board has jurisdiction over such alleged wrongdoing, it was thus empowered to hear the merits of the termination.

The Board did not hold a hearing on the motion to dismiss. However, on September 15, 1989, it entered an Opinion and Order which granted Ford's motion and dismissed the franchise termination appeal, and in the same order referred University's complaint (which alleged wrongdoing under Section 9(b)(3) of the Act) to the Board's prosecuting attorney for investigation. The Board's opinion outlined the reasons for its dismissal of the franchise termination action as follows: (1) University failed to maintain a valid dealership license in the Commonwealth and therefore precluded itself from bringing a franchise termination appeal; (2) the actions which University claimed forced it out of business were performed by FMCC, an entity regulated by the Pennsylvania Department of Banking, and not by Ford, a licensee of the Board; and, (3) lending and financing decisions which University claimed as the basis for its cause of action are not activities over which the Board has jurisdiction. This appeal followed.[3]

University presents two issues for our consideration. First, that because the failure to renew its dealer's license was caused by Ford and Ford's affiliate FMCC, the Board

3. On September 27, 1989, University filed an Application for Stay of the Operation of the Notice of Termination issued by Ford Motor Company Pending Review in the Commonwealth Court, to which Ford filed a Reply on October 10, 1989. In the interim, on September 29, 1989, University filed its Petition for Review with this Court. By order of October 19, 1989 the Board denied University's Application for Stay. University then filed an Application for Stay with this Court on November 14, 1989. Both the Board and Ford filed timely responses to the stay application. Following argument on the stay conducted via telephonic conference call on December 6, 1989, by order of this Court dated December 7, 1989 University's Application for Stay was denied.

failed to carry out its legislative mandate when it dismissed University's appeal. Second, University claims that the Board erred when it refused to grant a hearing on the factual issues presented by the pleadings surrounding Ford's motion to dismiss. With regard to University's first contention, the facts and arguments presented here are the same as those presented to the Board and set forth herein. We therefore apply the law to those facts.

University commenced this action by its filing of a franchise termination appeal pursuant to Section 9(c) of the Act which provides as follows:

(c) **Canceling of franchise.**—It shall be a violation of this act for any manufacturer, ... to unfairly, without due regard to the equities of said dealer and without just provocation, cancel the franchise of any vehicle dealer.... Not less than 60 days advance notice of such termination, cancellation or failure to renew shall be given the dealer ... prior to the effective date thereof unless the nature or character of the reason for termination, cancellation or failure to renew is such that the giving of such notice would not be in the public interest. At any time before the effective date of such termination, cancellation or failure to renew, the dealer ... may appeal to the board for a hearing on the merits, and following due notice to all parties concerned, such hearing shall be promptly held. No such termination, cancellation or failure to renew shall become effective until final determination of the issue by the board. In the event of a dealer ... appeal, the burden of proof shall be on the manufacturer ... to show that such termination, cancellation or failure to renew was for good cause and in good faith.

As noted *supra,* only a "dealer" may appeal a franchise termination. Section 2 of the Act defines dealer as:

(1) A person engaged in and devoting a substantial portion of time to the business of buying, selling or exchanging new and used vehicles, trailers or semitrailers on commission, compensation or other consideration, who

holds a written contract with a manufacturer, importer or distributor, giving such person selling rights for new motor vehicles, trailers or semitrailers....

In addition, Section 5(a) of the Act, 63 P.S. § 818.5(a) provides that "[t]o promote the public safety and welfare, it shall be unlawful for any person to engage in the business of ... dealer ... within this Commonwealth unless he has secured a license as required under this act."

■ With this in mind, we note that University has not disputed that it does not hold a Pennsylvania vehicle dealer's license. It further admits that it did not attempt to renew its license when the license expired *on May 31, 1989,* or nineteen days *before* Ford's Policy Board affirmed the notice of termination, and that it has not operated as a dealership since November, 1988.[4] Most important, University has not cited any authority which would require a vehicle manufacturer to provide financing to its franchisees. Simply put, University allowed its license to expire, in spite of the fact that under the provisions of Section 9(c) of the Act, University's franchise remained operative "until final determination of the [appeal] by the [State] board," here, until September 15, 1989. As such, the Board correctly concluded in this case that University's failure to maintain its dealer's license precluded it from appealing the termination of its franchise.

However, even allowing for the Board's clear right to dismiss University's protest based upon its continuing failure to maintain a dealer's license, we will nevertheless address University's contention that its failure to maintain a license was due to the actions of Ford. It is clear from the record that all of the alleged wrongdoing which University alleged to have occurred, *i.e.,* withholding of financing,

---

4. At or subsequent to this date, University terminated all sales and service personnel and discontinued its telephone service. In addition, the record also indicates that University lost, or allowed to lapse, its official inspection license and its dealer tags, along with business privilege, sales lot, sales and showroom, and automobile repair shop licenses issued by the City of Philadelphia. Finally, in January 1989 it leased its premises to a used car dealer.

refusal to accept a certified check and removal of inventory, which allegedly resulted in University being forced out of business, involved lending activities performed by FMCC in its capacity as a lending institution. Under the Motor Vehicle Sales Finance Act (Finance Act), Act of June 28, 1947, P.L. 1110, *as amended,* 69 P.S. §§ 601–637, administrative authority over this activity lies within the jurisdiction of the Pennsylvania Department of Banking. The Department of Banking not only licenses lending institutions such as FMCC, but regulates such lending and financing practices, and the Board may not invade that territory. Neither the Board of Vehicles Act nor the Finance Act empowers the Board to review the decisions of a lending institution with respect to business financing, regardless of whether the financing involves a vehicle dealership.

■ Therefore, because the Board of Vehicles Act is the law governing the jurisdictional parameters of the Board, and because the Act has not conferred upon the Board the authority to hear and determine claims involving lending and financing decisions, the Board has no jurisdiction over University's claims. Accordingly, the Board is not the proper forum to resolve University's complaint concerning the lending activities of FMCC.

University has also alleged that Ford has unreasonably withheld its consent to the sale of University's business in violation of Section 9(b)(3) of the Act. That Section provides:

> It shall be a violation of this act for any manufacturer ... licensed under this act to unreasonably withhold consent to the sale, transfer or exchange of the franchise to a qualified buyer capable of being licensed as a new vehicle dealer in this Commonwealth.

University contends that since it has alleged wrongdoing on the part of Ford under Section 9(b)(3), this allegation provides the Board with jurisdiction to determine the merits of a franchise termination appeal brought under Section 9(c) of the Act. Based on our discussion *supra,* we believe that

University has misconstrued the clear provisions of the Act and the Board's two separate and discrete functions.

The Act provides for a temporary stay in the event of a franchise termination appeal brought under Section 9(c). It does not, however, imbue the Board with injunctive powers in any other area. Consequently, any determination by the Board that a manufacturer has acted unreasonably in withholding consent to the sale of a franchise under Section 9(b)(3) could result only in a disciplinary sanction against the manufacturer. In summary, the relief sought in a franchise termination appeal under Section 9(c) of the Act, *i.e.*, the continuation of an existing franchise relationship between a dealer and a manufacturer, is not the same as the relief which may be obtained under Section 9(b)(3). In light of the above discussion the Board properly referred University's claim of wrongdoing, which entailed a disciplinary inquiry under Section 9(b)(3), to its prosecuting attorney for investigation.

University's second contention is that the Board should have conducted a hearing on Ford's motion to dismiss. However, our review of the facts clearly indicates that University is not a dealer licensed by the Board, and there is no allegation that the activities of Ford, which University claims put it out of business, are activities other than lending/financing decisions regulated by the Department of Banking. In such a circumstance, it is a fundamental principle of jurisprudence that an evidentiary hearing is not required in order for the Board to determine that it lacks jurisdiction over the subject matter of the alleged dispute. *See e.g.*, *Marks v. Civil Service Commission*, 7 Pa. Commonwealth Ct. 414, 299 A.2d 691 (1973) (Commission may *sua sponte* dismiss untimely filed appeal).

Accordingly, we affirm the Board's order.[5]

5. As a final matter, University alleges that the Board erroneously refused to consider its complaint that Ford directed University to file its appeal of Ford's termination decision within seven days of University's receipt of Ford's Policy Board's affirmance of the termination decision, in violation of Section 9(c) of the Act. Section 9(c) provides for sixty days' notice to the dealer of any termination decision *unless*

## ORDER

NOW, April 10, 1990, the order of the State Board of Vehicle Manufacturers, Dealers and Salespersons in the above-captioned matter is affirmed.

## ORDER

PER CURIAM.

NOW, June 8, 1990, it is ORDERED that the above-captioned opinion filed April 10, 1990 shall be designated OPINION rather than MEMORANDUM OPINION, and *it shall be reported.*

the nature of the reason for termination is such that the provision of such notice would not be in the public interest. At page 2 of its termination notice to University, Ford stated that the notice period set forth in Section 9(c) was not being provided because "such notice would not be in the public interest since the Dealer ceased doing business and the Dealer and principals of the Dealer have engaged in conduct unbecoming a reputable businessman." However, because of our disposition of this matter, we need not decide whether Ford's notice to University fell within the "public interest" exception to Section 9(c) of the Act.