

1994 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-20-1994

# Sun Buick, Inc. v. Saab Cars USA, Inc.

Precedential or Non-Precedential:

Docket 93-7476

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1994

Recommended Citation

"Sun Buick, Inc. v. Saab Cars USA, Inc." (1994). *1994 Decisions.* Paper 53.
http://digitalcommons.law.villanova.edu/thirdcircuit_1994/53

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1994 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

No. 93-7476


SUN BUICK, INC., t/a Sun Buick-Saab Inc.;
EUGENE J. SCHLANGER,

Appellants

v.

SAAB CARS USA, INC.

Stephen A. Melnick,
Intervenor-Appellant, Per Clerk
Order of September 10, 1993


On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civ. No. 93-00429)


Argued February 28, 1994

Before:  SLOVITER, Chief Judge,
ALITO, Circuit Judge, and ROBINSON[1], District Judge

(Filed June 20, 1994)

Joseph R. Solfanelli
Scranton, PA  18503
        Attorney for Appellants

James A. Mollica, Jr. (Argued)
Timothy Murray
Mollica, Murray & Hogue
Pittsburgh, PA  15219
        Attorney for Appellee

James T. Shoemaker (Argued)
Hourigan, Kluger, Spohrer & Quinn

_____

[1]Hon. Sue L. Robinson, United States District Judge for the
District of Delaware, sitting by designation.

Wilkes-Barre, PA 18701
         Attorney for Intervenor-appellant


                    OPINION OF THE COURT

SLOVITER, Chief Judge.

        The threshold issue presented by this appeal is whether an administrative agency, specifically the Pennsylvania Board of Vehicle Manufacturers, Dealers and Salespersons ("Pennsylvania Board of Vehicles"), should be considered a "State court" for purposes of allowing removal from it under 28 U.S.C. § 1441(a) (1988). The issue is a legal one over which our review is plenary.

                            **I.**

        In September 1992, Sun Buick, Inc., t/a Sun Buick-Saab, Inc., and Eugene Schlanger (collectively "Sun Buick"), who operated a Buick dealership, purchased a Saab franchise and entered into a franchise agreement with Saab Cars U.S.A., Inc. Sun Buick operated the Saab dealership out of the same location that it was operating the Buick dealership it owned.

        On January 26, 1993, Sun Buick entered into an agreement to sell the Saab franchise to intervenor Stephen Melnick. The agreement was contingent on Melnick securing a dealership from Saab and he began to complete the necessary paperwork. In the meanwhile, on February 11, 1993 Sun Buick sold the Buick dealership to S.B.I. Management Corp. S.B.I. took over Sun Buick's lot space and its dealer license, thereby divesting the Saab dealership of both a location and a license.

                            2

Because Saab had informed S.B.I. that Saab operations could not continue on that lot, Sun Buick suggested to Saab two alternative locations on which it could operate the Saab dealership until completion of the sale to Melnick. Saab rejected the suggested locations allegedly because it had not been given enough time to evaluate them, noting that allowing a relocation at that time would create instability as the dealership would presumably be moving again once it was sold.

In a letter dated February 23, 1993, Saab rejected Melnick as a dealer on the ground that he did not have the staff or facilities to begin operation of a dealership. In the same letter, Saab terminated its franchise with Sun Buick on three grounds: (1) Sun Buick lost its dealer license when it sold the Buick dealership on February 11; (2) since that time and continuing at least seven business days, no Saab operations were conducted at the approved facility; and (3) Sun Buick's interest in the approved facility was terminated in breach of its obligation to maintain the facility.

The termination was effective immediately although Saab acknowledged that Pennsylvania law requires that a manufacturer give a dealer 60 days notice before termination except in a situation where "the nature or character of the reason for termination . . . is such that the giving of such notice would not be in the public interest." Pa. Stat. Ann. tit. 63, §818.9(c) (Supp. 1993). Saab claimed that immediate termination was in the public interest because Saab operations had ceased and Sun Buick was unlicensed. Saab alleged that it wished to be able

3

to establish replacement Saab representation as soon as possible so that Saab customers in the area would have access to service.

On March 2, 1993, Sun Buick filed a complaint with the Pennsylvania Board of Vehicles alleging that Saab's actions violated the Board of Vehicles Act, Pa. Stat. Ann. tit. 63, §818.1 et seq. (Supp. 1993), by terminating the franchise without good cause and the required 60 days notice,[2] and in bad faith. Sun Buick also alleged that Saab had unreasonably withheld consent to the sale to Melnick in violation of section 818.9(b)(3).[3] On March 17, Sun Buick filed a second complaint with the Board of Vehicles alleging that Saab "improperly and unfairly rejected the request for approval of the relocation of [Sun Buick's] dealership facility." App. at 37. The Board consolidated the two complaints.

---

[2]Pa. Stat. Ann. tit. 63, § 818.9(c) (Supp. 1993) provides in relevant part that:

> It shall be a violation of this act for any manufacturer . . . to unfairly, without due regard to the equities . . . and without just provocation cancel the franchise of any distributor. . . . Not less than 60 days advance notice of such termination . . . shall be given . . . unless the nature and character of the reason for termination . . . is such that the giving of such notice would not be in the public interest.

[3]Pa. Stat. Ann. tit. 63 § 818.9(b)(3) (Supp. 1993) provides that it is a violation of the Act for any manufacturer to:

> Unreasonably withhold consent to the sale, transfer or exchange of the franchise to a qualified buyer capable of being licensed as a new vehicle dealer in this Commonwealth.

4

Saab removed the action to federal district court on March 29, 1993. Melnick filed a motion to intervene, Sun Buick moved to remand to the Board, and Saab moved to dismiss. The district court filed an opinion and order on June 23, 1993: (1) denying a remand; (2) granting a dismissal for failure to state a claim; and (3) dismissing the motion to intervene as moot. Sun Buick and Melnick appeal.[4]

## II.

We must consider at the outset the underlying jurisdictional issue presented by the district court's refusal to remand this case to the Pennsylvania Board of Vehicles. 28 U.S.C. § 1441(a) (1988) governs the removability of actions from state to federal court and provides in relevant part that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant" (emphasis added). Although Sun Buick did not contend in its brief that the Board of Vehicles was not a "court" for purposes of section 1441, we raised the issue sua sponte pursuant to our obligation to be assured of our own jurisdiction. See Trent Realty Assocs. v. First Fed. Sav. & Loan Ass'n, 657 F. 2d 29, 35 (3d Cir. 1981) ("A federal court is bound to consider its own jurisdiction preliminary to consideration of the merits.").

### A.

### The "Functional Test"

---

[4]Melnick did not file a timely appeal but we granted his motion to intervene on behalf of the appellants.

On its face, the removal statute limits removal to cases pending before a state "court."  This should be dispositive, as the Pennsylvania Board of Vehicles is, by definition, not a "court."

The district court found, nonetheless, that the Pennsylvania Board of Vehicles was a "court" for purposes of removal because "an examination of its functions . . . revealed that it was acting in an adjudicatory manner rather than in an administrative one."  District court op. at 3-4.  In so holding, it was following the prior determination by a judge of the same court in Corwin Jeep Sales & Service, Inc. v. American Motors Sales Corp., 670 F. Supp. 591, 594-95 (M.D. Pa. 1986), which treated the Pennsylvania Board as a "court" because it would be adjudicating a dispute between private parties, interpreting a franchise contract and utilizing the same procedures that courts use in deciding such disputes.

The genesis of the "functional test" for purposes of removal appears to have been the decision in Tool & Die Makers Lodge No. 78 International Ass'n of Machinists v. General Electric Co. X-Ray Dep't, 170 F. Supp. 945 (E.D. Wis. 1959), in which the district court refused to remand to the Wisconsin Employment Relations Board complaints filed by unions alleging that an employer had engaged in unfair labor practices and violated the collective bargaining agreement.  The court found that the Employment Board was a "court" because the subject matter was in essence breach of contract, the procedures that the Board employed, e.g., taking depositions and issuing subpoenas,

6

were those of a court, and the Board could enter an order requiring the person complained of to cease and desist from the contract violations and reinstate the employees with or without pay.

Two decades after the Tool & Die decision, the Court of Appeals of the Seventh Circuit adopted the "functional test" to allow removal from an administrative agency. In Floeter v. C. W. Transport, Inc., 597 F.2d 1100 (7th Cir. 1979), the court held that the Wisconsin Employment Relations Commission was a "court" for removal purposes. The court adopted a "functional test" that requires "evaluat[ing] the functions, powers, and procedures of the state tribunal and . . . the respective state and federal interests in the subject matter and in the provision of a forum." Id. at 1101–02. In deciding removal was proper, the court relied on the facts that the action was one for breach of contract between private parties, it would have to be decided by federal law, the procedures and process of the Commission were essentially judicial, and the Supreme Court of Wisconsin had recognized that the Commission was vested with "judicial power." Id. (quoting Layton Sch. of Art & Design v. Wisconsin Employment Relations Comm'n, 262 N.W.2d 218, 230 (Wis. 1978)).

Similarly, the First Circuit has stated, albeit in dictum, in Volkswagen de Puerto Rico, Inc. v. Puerto Rico Labor Relations Board, 454 F.2d 38 (1st Cir. 1972), that an action before the Puerto Rico Labor Relations Board would be removable under the "functional test." The court reasoned that the proceedings before the Board were between private parties and

7

involved essentially a breach of contract dispute. Significantly, the court relied on the judicial nature of the Board in general and not just on the judicial nature of the current proceedings by emphasizing the Board's "lack of rule-making or 'legislative' power," "its adjudicative format," and the reference by the Puerto Rico Supreme Court to the Board's function as being a "quasi-judicial" one. Id. at 44 & n.9. The court lastly reasoned that, in balancing federal and state interests, the federal interest in deciding federal law outweighed whatever interest the state may have. See id. at 45.

The "functional test" was also used by the Fourth Circuit in Kolibash v. Committee on Legal Ethics, 872 F.2d 571 (4th Cir. 1989), in its holding that a United States Attorney could remove a state bar disciplinary proceeding to the federal court. The court reasoned that the proceeding was adjudicatory in nature in that the Committee was an arm of the state court and conducted itself as a court in holding evidentiary hearings and taking testimony. See id. at 576. The force of Kolibash on the issue before us is diminished, however, because removal in Kolibash was based on 28 U.S.C. § 1442(a),[5] the federal officer removal statute, which is broadly construed, as distinguished

_____
[5]28 U.S.C. § 1442(a) (1988) provides in relevant part:

> A civil action or criminal prosecution commenced in a State court against any of the following persons may be removed by them to the district court . . . :
>
> > **(1)** Any officer of the United States . . . for any act under color of such office . . . .

8

from section 1441, the removal statute here, which is strictly construed.  See id; Abels v. State Farm Fire & Casualty Co., 770 F.2d 26 (3d Cir. 1985) (28 U.S.C. § 1441(a) "should be strictly construed and all doubts should be resolved in favor of remand").

In contrast to some of the above cases, the functional test was disapproved in County of Nassau v. Cost of Living Council, 499 F.2d 1340 (Temp. Emer. Ct. App. 1974), where the court rejected removal from the Cost of Living Council which had issued an order limiting pay increases.  The court stated that section 1441(a) contemplates removal from other court proceedings rather than the "interruption of administrative proceedings." Id. at 1343; see also California Packing Corp. v. I.L.W.U. Local 142, 253 F. Supp. 597, 598-99 (D. Haw. 1966) (holding removal from administrative agencies improper because statute speaks to removal only from courts and finding Tool & Die reasoning "strained").

The courts that have adopted the "functional test" for interpreting what is a "court" under section 1441 have relied in large part on the reasoning used by the Supreme Court in Upshur County v. Rich, 135 U.S. 467 (1890), where the Court held that notwithstanding the nomenclature of "county court" as the entity from which removal was sought, the case did not involve a removable "suit".  It is true that the Court looked to the actual powers, composition and procedures of the entity in making its decision, saying:

9

> The principle . . . is, that a proceeding,
> not in a court of justice, but carried on by
> executive officers in the exercise of their
> proper functions, as in the valuation of
> property for the just distribution of taxes
> or assessments, is purely administrative in
> its character, and cannot, in any just sense,
> be called a suit . . . .

> [T]he appeal from the assessment was
> made to the 'county court' eo nomine, yet
> that this is not a judicial body, invested
> with judicial functions, except in matters of
> probate; but is the executive or
> administrative board of the county, charged
> with the management of its financial and
> executive affairs.

Id. at 477; see also Village of Walthill v. Iowa Elec. Light & Power Co., 228 F.2d 647, 648-53 (8th Cir. 1956) (holding removal from the Nebraska "condemnation court" improper in that "[t]he three-judge condemnation court [was] in reality just another board of appraisers").

It does not follow that because Upshur County held that a court is not necessarily a "court" for removal purposes, the Supreme Court has endorsed the view that an administrative agency might be a "court" for removal purposes. Therefore, we find questionable the reasoning of the Tool & Die court that the Supreme Court has adopted a functional test which would require us to judge the propriety of removal from a tribunal "by reference to the procedures and functions of the State tribunal rather than the name by which the tribunal is designated." 170 F. Supp. at 950.

There is further evidence in other Supreme Court decisions from the same era that Upshur County did not broadly

10

adopt a "functional test" by which an administrative body would be treated as a "court" for federal removal purposes simply because it performs a judicial function.  In those cases, when the Court held that removal was proper it was careful to note that the body in question was a judicial body under state law. For example, in Madisonville Traction Co. v. Saint Bernard Mining Co., 196 U.S. 239, 250-51 (1905), the Court stated:

> We cannot doubt, in view of the authorities, that the case presented in the County Court was a "suit" or "controversy between citizens of different States," within the meaning of the Constitution and the laws of the United States.  It was, as already said, a judicial proceeding initiated in a tribunal which constitutes a part of the judicial establishment of Kentucky, as ordained by its Constitution . . . ; and the court, although charged with some duties of an administrative character, is a judicial tribunal and a court of record.

(emphasis added).

Similarly, in Commissioners of Road Improvement District No. 2 v. St. Louis Southwestern Railway Co., 257 U.S. 547, 556-57 (1922), the Court, in upholding a removal from an Arkansas County Court, noted that the Arkansas constitution invested that court with "judicial power" and that the state supreme court had "held the County Court to be a court and capable of rendering judgment in a proceeding whose judicial character is much more questionable than here."  We have found no case from the Supreme Court, nor have the parties cited one, holding that a case can be removed from an administrative agency to federal court on the grounds that the administrative agency is functionally a court.

11

This court has previously examined the status of administrative agencies as "courts" in another context, i.e., the section of the Clean Air Act, 42 U.S.C. § 7401 et seq. (1988), which provides that a private citizen enforcement action may not proceed if "the Administrator or State has commenced . . . a civil action in a court of the United States or a State." 42 U.S.C. § 7604(b)(1)(B) (1988) (emphasis added). In Baughman v. Bradford Coal Co., 592 F.2d 215 (3d Cir.), cert. denied, 441 U.S. 961 (1979), we had to decide whether the federal court had jurisdiction over the private action notwithstanding that the Pennsylvania Department of Environmental Resources had already begun an action against the same defendant before the Pennsylvania Environmental Hearing Board. We stated that for that purpose, "an administrative board may be a 'court' if its powers and characteristics make such a classification necessary to achieve statutory goals." Id. at 217. However, we held that the Pennsylvania Hearing Board was not a court in that it "lacked the power to enjoin violations" of the company's effluent restrictions, was "empowered only to assess a penalty which [could] not exceed $10,000," and there was "lack of citizen intervention of right in the agency proceeding." Id. at 218-219.

We considered the identical citizen suit provision, albeit in the Clean Water Act, in Student Public Interest Research Group v. Fritzsche, Dodge & Olcott, Inc., 759 F.2d 1131, 1136 (3d Cir. 1985), where we held, relying on Baughman, that an EPA enforcement action was not a "court" proceeding. We characterized the Baughman inquiry as a dual one:

12

> The first question to be answered is whether the coercive powers that the administrative agency possesses compel compliance with effluent limitations . . . . The second inquiry concerns the procedural similarities the agency proceeding might have to a suit in federal court.

Id. at 1137. We noted that the EPA's enforcement powers under the Act were very limited, consisting of the power to issue "permits, modify permits, and terminate permits for noncompliance," and that it could not impose any civil penalty, while a district court could assess fines of up to $10,000 a day. Id. at 1138. We also noted that the procedure the EPA followed in its enforcement proceedings did not resemble that of a court in that there was no independent decisionmaker, no witnesses, no records kept, and no evidence presented by opposing parties. See also Proffitt v. Commissioners, Township of Bristol, 754 F.2d 504, 506-07 (3d Cir. 1985) (under identical citizen suit provisions in other environmental statutes, EPA's compliance order not a suit in a court because the administrative tribunal did not have "power to accord relief equivalent to that available from a court").

We need not decide the viability of the dictum in these cases suggesting that a court's right to proceed with a citizen's suit in an environmental case might be precluded by action before an administrative agency as well as before a court, because the issue here is a different one. However, it is of some interest that the Baughman reasoning was rejected by both the Second and Ninth Circuits. In Friends of the Earth v. Consolidated Rail

13

Corp., 768 F.2d 57 (2d Cir. 1985), the Second Circuit interpreted the same citizen suit provision of the Clear Air Act that was at issue in Baughman. The court, reasoning that when a statute is unambiguous the court's task is simply to enforce it as written, held that it would be "inappropriate to expand th[e] language to include administrative enforcement actions" as equivalent to those of civil actions in a "court." Id. at 62. Similarly, the Ninth Circuit rejected Baughman in Sierra Club v. Chevron U.S.A., Inc., 834 F.2d 1517, 1525 (9th Cir. 1987), stating "[w]e prefer the Second Circuit's reading . . . over the Third Circuit's reading." The court emphasized that it would not take the "extraordinary step of ignoring the plain language of the statute." Id.

Even if we were still inclined to follow Baughman's application of the "functional" test for purposes of permitting maintenance of a private citizen enforcement suit in environmental litigation, the removal context is sufficiently distinct to make the cases distinguishable. What is significant is that no case in this court ever held that an administrative agency was actually a "court." Nevertheless, we may pretermit the decision whether removal under section 1441(a) from an administrative agency is ever permissible in an exceptional case, because it is clear that the Pennsylvania Board of Vehicles would not qualify under any circumstances.

B.

Status of the Pennsylvania Board of Vehicles

14

Under any test, the Pennsylvania Board of Vehicles would not qualify as a court because its lack of judicial attributes is similar to that of the agencies which we held were not courts in the environmental cases.  As we stated in Baughman, "[g]enerally, the word 'court' in a statute is held to refer only to the tribunals of the judiciary and not to those of an executive agency with quasi-judicial powers."  592 F.2d at 217. It follows that even if an entity is not called a "court," it must have the attributes of a court before it should be considered as one.

Rather than possessing the powers of a court, the Pennsylvania Board of Vehicles administers and enforces the Board of Vehicles Act.  It regulates the licensing of salespersons, dealers, brokers and manufacturers.  It passes on the qualifications for licensure, investigates allegations of wrongful acts, and brings criminal prosecutions for unauthorized practices (i.e. acts as a prosecutor).  An examination of the Board's powers and duties makes it clear that its powers are those of the usual type of administrative agency rather than those of a court.[6]

---

[6]Section 818.4 entitled "Powers and duties of board" provides:

> The board shall have the power and its duty
> shall be to:
>
>     (1) Provide for and regulate the licensing
> of salespersons, dealers, brokers,
> manufacturers, factory branches,
> distributors, distributor branches, factory
> or distributor representatives and
> wholesalers as defined in this act.

15

(2) Review and pass upon the qualifications of applicants for licensure and to issue, except as otherwise provided herein, a license to engage in the said businesses to any applicant who is approved by the board and who meets the requirements of this act.

(3) Investigate on its own initiative, upon complaint of the Department of Transportation, Department of Community Affairs, Department of Revenue or the Office of the Attorney General, or upon the verified complaint in writing of any person, any allegations of the wrongful act or acts of any licensee or person required to be licensed hereunder.

(4) Administer and enforce this act and to impose appropriate administrative discipline upon licensees found to be in violation of this act.

(5) Bring criminal prosecutions for unauthorized, unlicensed or unlawful practices and bring an action to enjoin such practices.

(6) Require each licensee to register biennially with the board.

(7) Keep a record showing the names and addresses of all licensees licensed under this act.

(8) Keep minutes and records of all its transactions and proceedings especially with relation to the issuance, denial, registration, formal reprimand, suspension and revocation of licenses. In all actions or proceedings in any court, a transcript of any board record or any part thereof, which is certified to be a true copy by the board, shall be entitled to admission in evidence.

(9) Adopt, promulgate and enforce such rules and regulations not inconsistent with this act as are deemed necessary and proper to effectuate the provisions of this act,

In the cases following <u>Baughman</u> where we determined that various administrative actions were not proceedings in a "court," we held that an administrative agency would not be considered a court if it did not have the "power to accord relief equivalent to that available from a court." <u>Proffitt</u>, 754 F.2d at 506-07. The Pennsylvania Board of Vehicles does not have such power in that it cannot award damages. Its powers of action to afford relief are circumscribed: it can only enjoin a franchise termination alleged to be in violation of section 818.9(c) or the addition or relocation of a new vehicle dealer that is in violation of section 818.18,[7] and it can impose disciplinary sanctions. As the Pennsylvania Commonwealth Court has recognized:

> including but not limited to, established place of business.
>
> (10) Submit annually, to the Transportation Committees of the House and Senate, a description of the types of complaints received, status of the cases, board action which has been taken and length of time from the initial complaint to final board resolution.
>
> (11) Submit annually to the department an estimate of the financial requirements of the board for its administrative, investigative, legal and miscellaneous expenses.
>
> (12) Submit annually to the House and Senate Appropriations Committees, 15 days after the Governor has submitted his budget to the General Assembly, a copy of the budget request for the upcoming year which the board previously submitted to the department.

[7] Section 818.18 governs when a new vehicle dealer may be established or relocated into a relevant market area where the same line-make is already represented.

17

> The Act provides for a temporary stay in the event of a franchise termination appeal brought under Section 9(c). It does not, however, imbue the Board with injunctive powers in any other area. Consequently, any determination by the Board that a manufacturer has acted unreasonably in withholding consent to the sale of a franchise under Section 9(b)(3) could result only in a disciplinary sanction against the manufacturer.

University Lincoln Mercury, Inc. v. Pennsylvania Board of Vehicle Manufacturers, 576 A.2d 1146, 1150 (Pa. Commw. Ct. 1990).

The limited nature of the Board's powers was also emphasized in Trailmobile, Inc. v. State Board of Manufacturers, 612 A.2d 574 (Pa. Commw. Ct. 1992), appeal denied, 634 A.2d 226 (Pa. 1993):

> The Act grants certain disciplinary powers to the Board. When the Board determines that a violation of the Act has been committed it may formally reprimand, suspend the license of, or refuse to issue or renew the license of the violator. Additionally, Section 19 of the Act provides that the Board may levy a civil penalty of $1,000 upon any current licensee who violates a provision of the Act.

> We reject Tri-State's request for additional relief because the Act is specific in its grant of power to the Board. We have already stated that the power and authority to be exercised by administrative commissions must be conferred clearly and unmistakably by the legislature; a doubtful power does not exist. Other than the temporary stay that may be issued in a suspected violation of Section 18 of the Act, and the permanent injunction that may issue if the Board determines that there is good cause for not permitting the addition or relocation of a new vehicle dealer under Section 18, the Act does not grant the Board injunctive powers.

18

Id. at 576 (citations omitted). The fact that the Board can only assess fines of $1,000 is significant considering our reliance in Baughman on the Environmental Hearing Board's ability to impose fines of only $10,000 as one of the factors influential to our finding that the Board was not a "court." 592 F.2d at 1218.

We assume that the Pennsylvania legislature expressly provided that any person who may be injured by a violation of the Act may bring an action for damages, including punitive damages, or equitable relief including injunctive relief in any court of competent jurisdiction[8] in recognition of the Board's inability to award damages or full injunctive relief.

Not only does the Pennsylvania Board of Vehicle's have a dearth of judicial-type powers but its composition also has none of the characteristics of a court such as disinterestedness,

---

[8]Section 818.20 entitled "Civil actions for violations" provides:

> **(a) Action for damages**. -- Notwithstanding the terms, provisions or conditions of any agreement or franchise or other terms or provisions of any novation, waiver or other written instrument, any person who is or may be . . . injured in his business or property by a violation of a provision of this act relating to that franchise, or any person so injured because he refuses to accede to a proposal for an arrangement which, if consummated, would be in violation of this act, may bring an action for damages and equitable relief, including injunctive relief, in any court of competent jurisdiction.

> **(b) Punitive Damages**. -- If any person engages in continued multiple violations of a provision or provisions of this act, the court may award punitive damages in addition to any other damages under this act.

19

separation from the executive and learnedness in the law.  The Board is composed of three new car dealers, three used car dealers, one mobile home dealer, one salesperson, one recreational dealer, one motorcycle dealer, the Commissioner of Professional and Occupational Affairs, the Secretary of the Department of Transportation or his designee, the Director of Consumer Protection in the Office of Attorney General or his designee and four members of the general public having no connection to the vehicle business.  See Pa. Stat. Ann. tit. 63, § 818.3(a) (Supp. 1993).  This composition is unlike that of a court in that it is composed mostly of people who have jobs other than that of serving as judges, see Pa. Const. art. 5, § 17(a) (mandating that judges devote full time to their judicial duties), and includes members of the executive branch as well as persons who are likely to be partial toward dealers and their industry.  While lay persons may sometimes be well versed in the law, the absence of any requirement of legal knowledge or experience by almost all of the members of the Board is striking.

Additionally, Pennsylvania, itself, does not consider the Board a court.  See Trailmobile, 612 A.2d at 576; University Lincoln Mercury, 576 A.2d at 1150.  It is not described in the portions of the Pennsylvania Constitution related to its court system, see Pa. Const. art. 5, or in the Pennsylvania statutes relating to the court system.  See 42 Pa. Cons. Stat. Ann. et seq. (1981 & Supp. 1993).

In enumerating the ways in which the Pennsylvania Board of Vehicles is unlike a court, it becomes clear that Floeter,

20

Volkswagen, and Tool & Die are distinguishable on their facts. In both Floeter and Volkswagen, the administrative agencies had been acknowledged by their state supreme courts as having judicial powers, and the agencies had more judicial powers and procedures than the Pennsylvania Board of Vehicles has. The Tool & Die court relied in part on powers that the administrative agency at issue there had that exceeded the powers of the Board of Vehicles, namely, ordering the affirmative relief of reinstatement of employees with pay.

Finally, we note that the district court in this case adopted the analysis used in Corwin Jeep Sales, 670 F. Supp. at 593-95, when it held that removal was proper if the Board "was acting in an adjudicatory manner rather than in an administrative one." District court op. at 3-4. However, this reasoning inappropriately conflates two requirements of the removal statute. Under 28 U.S.C. § 1441(a), "any civil action" of which the district courts have original jurisdiction and was "brought in a State court" may be removed to the district court. The requirement that it be a "civil action" is separate from the requirement that it be brought in a "State court."

The distinction was made clear in Commissioners of Road Improvement District No. 2 v. St. Louis Southwestern Railway, 257 U.S. 547, 550 (1922), where the Supreme Court analyzed these requirements separately in deciding whether a proceeding in a state county court "to assess benefits and damages growing out of a road improvement was properly removed to the federal District Court." The Court, after noting that the county court had been

21

recognized by the state supreme court to be a court, went on to examine the proceeding to determine whether it was a "judicial controversy," as opposed to an administrative concern:

> Of course, the statutory designation of the action of a body as a judgment, or the phrasing of its finding and conclusion in the usual formula of a judicial order, is not conclusive of the character in which it is acting. When we find, however, that the proceeding before it has all the elements of a judicial controversy, to wit, adversary parties and an issue in which the claim of one of the parties against the other capable of pecuniary estimation, is stated and answered in some form of pleading, and is to be determined, we must conclude that this constitutional court is functioning as such.

Id. at 557 (citation omitted).

If we analyze the status of the Pennsylvania Board of Vehicles separately from the nature of the proceedings before it, it becomes clear that, in general, the Board's procedures, functions, and character do not make it a court. It is therefore irrelevant whether the proceeding may qualify as a "civil action" because it is a contract dispute between two private parties, or even whether it could be brought as an original proceeding in the district court on the basis of diversity jurisdiction. The matter was not brought in a "State court" and therefore was not removable under section 1441(a).

**III.**

Applying the general principle that the removal statute is to be strictly construed, we hold that an administrative agency without the attributes of a court should not be considered

22

a "State court" under 28 U.S.C. § 1441(a).  Therefore, we will reverse the judgment of dismissal of the district court and remand this case to the district court with directions that it be remanded to the Pennsylvania Board of Vehicles.