834 F.2d 1517
 27 ERC 1001, 56 USLW 2397, 18 Envtl.
L. Rep. 20,237
 SIERRA CLUB, a California non-profit corporation,
Plaintiff/Appellant/Cross- Appellee,
v.
CHEVRON U.S.A., INC., a California corporation,
Defendant/Appellee/Cross- Appellant.
 Nos. 86-6287, 86-6288.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Oct. 9, 1987.
Decided Dec. 29, 1987.
 
 Deborah S. Reames and Michael R. Sherwood, Sierra Club Legal Defense Fund, Inc., San Francisco, Cal., for Sierra Club, for plaintiff/appellant/cross-appellee.
 Sarah G. Flanagan, San Francisco, Cal., for Chevron, U.S.A., Inc., for defendant/appellee/cross-appellant.
 Appeal from the United States District Court for the Central District of California.
 Before BROWNING, Chief Judge, PREGERSON and REINHARDT, Circuit Judges.
 PREGERSON, Circuit Judge:
 
 
 1
 The Sierra Club filed a citizen enforcement action against Chevron U.S.A. Inc. ("Chevron") alleging that Chevron's El Segundo, California refinery repeatedly violated the terms of its National Pollutant Discharge Elimination System ("NPDES") permit. Chevron filed a motion for summary judgment, contending that some of Sierra Club's claims were barred by California's three-year statute of limitations and that the entire action was precluded because the state Regional Water Quality Control Board ("the Regional Board") had already taken enforcement action against Chevron. The district court granted summary judgment for Chevron on the statute of limitations issue, holding that the California three-year statute of limitations applied. Sierra Club appeals from this ruling. The district court denied summary judgment on the issue of the Regional Board's prior enforcement action, holding that the Regional Board's action against Chevron did not preclude Sierra Club's citizen enforcement suit. Chevron cross-appeals from this ruling. We affirm in part and reverse in part.
 
 BACKGROUND
 I. Statutory Framework
 
 2
 The objective of the Clean Water Act (also known as the "Federal Water Pollution Control Act"), 33 U.S.C.A. Secs. 1251-1376 (West 1986 & Supp.1987), is "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." Id. Sec. 1251(a). The Clean Water Act, as amended in 1972, provides that in order to achieve this objective, "it is the national goal that the discharge of pollutants into the navigable waters be eliminated by 1985." Id. The Clean Water Act prohibits the discharge of all pollutants except as authorized by the Environmental Protection Agency ("EPA"). Id. Sec. 1311(a).
 
 
 3
 The Clean Water Act requires that the EPA promulgate "effluent limitation" standards[1] for numerous categories of industrial polluters. Under the National Pollutant Discharge Elimination System, the EPA issues permits to individual dischargers. The permits make the generally applicable effluent limitations and other water quality standards the individual obligation of the discharger. 33 U.S.C. Sec. 1342. The Clean Water Act provides that each discharger holding a NPDES permit shall monitor and report on its compliance with its permit. Each discharger must install, use, and maintain monitoring equipment and must sample its effluents. 33 U.S.C. Sec. 1318(a)(4)(A). The discharger must report the results of its self-monitoring to the EPA and the state agency that issues the permit.
 
 
 4
 In accordance with the Clean Water Act's policy "to recognize, preserve, and protect the primary responsibilities and rights of States to prevent, reduce, and eliminate pollution," 33 U.S.C. Sec. 1251(b), certain states are authorized to issue NPDES permits to discharging entities within the state. 33 U.S.C. Secs. 1251(b), 1342(b). Under the Clean Water Act, the EPA Administrator is principally responsible for enforcing permits, whether issued by the EPA or by a state agency. 33 U.S.C. Sec. 1319. While each state agency that issues permits is required to enforce them, the EPA Administrator must take independent enforcement action in the event that the state fails to fulfill its enforcement responsibility. Id.
 
 
 5
 The Clean Water Act also provides for citizen enforcement suits. 33 U.S.C. Sec. 1365. A citizen may bring an action against any person who is alleged to be in violation of an effluent standard or limitation or an order issued by the EPA or a state agency. 33 U.S.C. Sec. 1365(a). A citizen may also bring an action against the Administrator for the Administrator's failure to perform nondiscretionary functions. Section 1365(b)(1) provides that a citizen suit may not be brought against an alleged violator
 
 
 6
 (A) prior to sixty days after the plaintiff has given notice of the alleged violation (i) to the [EPA] Administrator, (ii) to the State in which the alleged violation occurs, and (iii) to any alleged violator of the standard, limitation, or order, or
 
 
 7
 (B) if the [EPA] Administrator or State has commenced and is diligently prosecuting a civil or criminal action in a court of the United States, or a State to require compliance with the standard, limitation, or order, but in any such action in a court of the United States any citizen may intervene as a matter of right.
 
 
 8
 California maintains an NPDES permit program that has been approved by the EPA Administrator. Chapter 5.5 of the Porter-Cologne Water Quality Control Act, Cal. Water Code Sec. 13370 et seq., is the legislation the California legislature passed to implement and enforce the state NPDES program.
 
 II. Facts
 
 9
 Chevron's El Segundo facility discharges wastewater into Santa Monica Bay. The facility's NPDES permit, first issued in 1977, sets out the amounts of various pollutants that the facility may discharge. Chevron has had chronic difficulty in adhering to the terms of the permit. Its self-monitoring reports indicate that it has repeatedly discharged effluents containing impermissible levels of oil and grease; phenols; impermissible pH levels for acidity; inappropriate temperature ranges; materials creating an undue biological oxygen demand; high levels of total suspended solids; and ammonia and other harmful substances.
 
 
 10
 In May 1980, in the face of Chevron's failure to comply with the permit's terms, the Regional Board held a public hearing and issued an enforcement order that required refinements in the facility's water treatment system. Notwithstanding its obedience to this order, Chevron continued to exceed the permit limitations.
 
 
 11
 On September 11, 1984, the Sierra Club sent a letter to Chevron, the Administrator of the EPA, the Regional Board, and the California State Water Resources Control Board ("the State Board") stating its intent to file a citizen enforcement suit based on the refinery's violations of its NPDES permit. On November 19, 1984, the Regional Board held a public hearing to determine what enforcement action to take against the refinery. Sierra Club did not participate in the hearing. At the end of the hearing, the Regional Board adopted an order requiring Chevron to cease and desist from violating its permit and to build a new effluent diversion facility.
 
 
 12
 On December 17, 1984, Chevron petitioned the State Board to modify the cease and desist order insofar as the order required compliance with the permit's terms before the completion of the effluent diversion facility. Sierra Club opposed Chevron's petition for review. The State Board denied the petition on September 19, 1985. The Regional Board assessed the facility $58,000 in fines for six permit violations that occurred in 1985.
 
 
 13
 On March 19, 1985, Sierra Club filed a complaint in its citizen enforcement suit. In the complaint, Sierra Club alleged violations of the refinery's NPDES permit dating from July 1977 to the date of the filing of the complaint. On May 6, 1985, Chevron filed alternative motions for summary judgment and for dismissal. Chevron argued that summary judgment was appropriate on all claims because the Regional Board's action against Chevron barred a citizen enforcement suit under 33 U.S.C. Sec. 1365(b)(1)(B). Chevron argued in the alternative that partial summary judgment was in order on all claims that related to violations occurring before March 19, 1982, because California's three-year statute of limitations barred these claims.
 
 
 14
 The district court granted partial judgment for Chevron on the statute of limitations issue, but denied Chevron's summary judgment motion based on the Regional Board's action against Chevron.
 
 
 15
 On April 8, 1986, the district court certified the statute of limitations and Regional Board enforcement issues as appropriate for interlocutory appeal pursuant to 28 U.S.C. Sec. 1292(b).
 
 DISCUSSION
 I. Statute of Limitations
 
 16
 We review de novo district court orders granting summary judgment. Darring v. Kincheloe, 783 F.2d 874, 876 (9th Cir.1986) (citing Lojek v. Thomas, 716 F.2d 675, 677 (9th Cir.1983)); Ashton v. Cory, 780 F.2d 816, 818 (9th Cir.1986).
 
 A. Applicable Statute of Limitations
 
 17
 The parties disagree about which statute of limitations governs citizen enforcement actions under the Clean Water Act. The district court had three options in addressing the statute of limitations problem. First, it could have concluded that no statute of limitations applied. Second, it could have applied the federal five-year statute of limitations set out at 28 U.S.C. Sec. 2462. Third, it could have applied California's three-year statute of limitations set out at Cal.Code Civ.Proc. Sec. 338(9). The district court took the third option, granting summary judgment for Chevron on Sierra Club's claims relating to violations that fell outside of the three-year California statute of limitations period. The court stated:
 
 
 18
 Plaintiff contends the appropriate period of limitations for citizen actions under the Clean Water Act, which is silent on the issue, is the five year period prescribed by 28 U.S.C. Sec. 2462. The court is bound, however, to apply the most analogous state statute. Ward v. Caulk, 650 F.2d 1144 (9th Cir.1981). In this case that statute is the three year period which Cal.Code Civ.Proc. Sec. 338(9) provides for actions under the Porter-Cologne Water Quality Act.
 
 
 19
 The district court was correct in stating that the Clean Water Act contains no statute of limitations. However, it is incorrect to state that a court's obligation is to apply "the most analogous state statute." Ordinarily, when a federal statute contains no limitations provision, a federal court should apply the "most appropriate" statute of limitations provided by state law, unless there is a "relevant" federal statute of limitations.[2] Johnson v. Railway Express Agency, Inc., 421 U.S. 454, 462, 95 S.Ct. 1716, 1721, 44 L.Ed.2d 295 (1975). Thus, a state statute of limitations should only be applied in the absence of a relevant federal statute of limitations. A further caveat to this general rule is that a state statute of limitations should not be applied where its application would frustrate federal policy. Occidental Life Ins. Co. v. EEOC, 432 U.S. 355, 367, 97 S.Ct. 2447, 2454, 53 L.Ed.2d 402 (1977). In Occidental Life, the Supreme Court stated:
 
 
 20
 [T]he Court has not mechanically applied a state statute of limitations simply because a limitations period is absent from the federal statute. State legislatures do not devise their limitations periods with national interests in mind, and it is the duty of the federal courts to assure that the importation of state law will not frustrate or interfere with the implementation of national policies.
 
 
 21
 Id.
 
 
 22
 Under Johnson and Occidental Life, we consider first whether a "relevant" federal statute of limitations exists. If one exists, it should be applied here. If none exists, then it is appropriate to look to state law to find an analogous state statute of limitations. Any analogous state statute of limitations should be examined for whether it frustrates any national policies.
 
 
 23
 Sierra Club has identified 28 U.S.C. Sec. 2462 as a relevant federal statute of limitations. That section states:
 
 
 24
 Except as otherwise provided by Act of Congress, an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued....
 
 
 25
 This section clearly applies to enforcement actions brought by the EPA; such actions are by the government and "for the enforcement of [a] civil fine." We must decide whether the section likewise applies to citizen enforcement suits.
 
 
 26
 Several district courts have already held that section 2462 applies to citizen actions seeking the enforcement of civil penalties under the Clean Water Act. See, e.g., Atlantic States Legal Found. v. Al Tech Specialty Steel Corp., 635 F.Supp. 284, 287 (N.D.N.Y.1986); Connecticut Fund for the Environment v. Job Plating Co., 623 F.Supp. 207, 213 (D.Conn.1985); Chesapeake Bay Found. v. Bethlehem Steel Corp., 608 F.Supp. 440, 450 (D.Md.1985); Friends of the Earth v. Facet Enters., Inc., 618 F.Supp. 532, 536 (W.D.N.Y.1984). We agree with these courts. Application of section 2462 to citizen enforcement suits is in keeping with the language of the statute; a citizen enforcement suit is also an "action ... for the enforcement of [a] civil fine." Furthermore, this approach logically extends pre-Clean Water Act circuit decisions regarding the proper scope of section 2462 and promotes the important federal policy of uniformly and adequately enforcing the Clean Water Act.
 
 
 27
 Thirteen years before the Clean Water Act was enacted, the Second Circuit, in Bertha Building Corp. v. National Theatres Corp., 269 F.2d 785, 788 (2d Cir.1959), cert. denied, 361 U.S. 960, 80 S.Ct. 585, 4 L.Ed.2d 542 (1960), stated that section 2462 applied to actions asserted on behalf of the United States and to qui tam actions.[3] Citizen enforcement actions greatly resemble government enforcement and qui tam actions. A citizen plaintiff, when bringing an enforcement action, supplements the enforcement power of the EPA. See Gwaltney of Smithfield v. Chesapeake Bay Found., Inc., --- U.S. ----, ---- - ----, 108 S.Ct. 376, 382-83, 98 L.Ed.2d 306 (1987). Although citizen plaintiffs may seek civil penalties only in the context of suits brought to enjoin or otherwise abate ongoing violations, id. at 4019, 108 S.Ct. at 382, in those suits citizen plaintiffs effectively stand in the shoes of the EPA. The citizen plaintiff's role is to assert permit violations and to request that a fine be imposed; the citizen plaintiff does not personally benefit from bringing the action. In fact, as explained by the court in Chesapeake Bay Found. v. Bethlehem Steel Corp., 608 F.Supp. at 449, citizen plaintiffs under the Clean Water Act are more fittingly covered by 28 U.S.C. Sec. 2642 than are ordinary qui tam plaintiffs:
 
 
 28
 The [citizen plaintiffs in a Clean Water Act suit] are suing as private attorneys general, and they seek the enforcement of federal law. Although the statute provides that a citizen sues "on his own behalf," any penalties recovered from such an action are paid into the United States Treasury. Unlike in a qui tam action, where a volunteer plaintiff can recover part of the penalty, in this action a plaintiff recovers nothing. Any benefit from the lawsuit, whether injunctive or monetary, inures to the public or to the United States. The citizen suit provision was designed to supplement administrative enforcement, not to provide a private remedy. Under these circumstances it seems most appropriate that the same statute of limitations applies to a citizen action as to a federal administrative action.
 
 
 29
 Because citizen enforcement suits are analogous to EPA enforcement suits and qui tam actions, we hold that 28 U.S.C. Sec. 2462 applies to citizen enforcement actions.
 
 
 30
 Even were we inclined to apply an "analogous" state statute of limitations rather than 28 U.S.C. Sec. 2462, it would be inappropriate to hold that the California three-year statute of limitations applies. Cal.Code Civ.Proc. Sec. 338(9) provides that a three-year statute of limitations applies to actions brought under the Porter-Cologne Act, which establishes the California NPDES program. Sierra Club correctly contends that application of this three-year statute of limitations to citizen enforcement suits would frustrate federal policy, contravening the Supreme Court's instruction in Occidental Life that state statutes of limitations should not be applied if application would frustrate or interfere with the implementation of national policies.
 
 
 31
 The first frustration of national policy in applying a three-year statute of limitations is that citizen plaintiffs would be handicapped in their ability to serve as effective attorneys general. By facing a shorter statute of limitations than the EPA faces, citizen plaintiffs would be limited in their ability to monitor EPA enforcement and then, if dissatisfied with EPA action, bring a citizen enforcement action. Secondly, as Sierra Club points out, if state statutes of limitations were applied, there would be no uniformity of enforcement of the Clean Water Act from state to state. These disparities between the powers of the EPA and citizen plaintiffs and among the powers of citizen plaintiffs in the various states can only lead to confusion and diminish the effective enforcement of the Clean Water Act.
 
 
 32
 Because a relevant federal statute of limitations exists and because applying California's statute of limitations would frustrate national policies, we decline to apply California's three-year statute of limitations.
 
 B. Tolling of the Statute of Limitations
 
 33
 Now that we have concluded that the five-year federal statute of limitations applies, we must decide when the statute of limitations was tolled in this case. Sierra Club contends that the statute of limitations was tolled when Sierra Club filed notice of its intent to sue. Chevron contends that the statute of limitations was tolled only when Sierra Club filed the complaint. We hold that the statute of limitations was tolled sixty days before the filing of Sierra Club's complaint.
 
 
 34
 The district court did not expressly rule on when the statute of limitations in this case was tolled. However, in its motion for partial summary judgment on the statute of limitations issue, Chevron requested that the court strike Sierra Club's claims based on violations occurring before March 19, 1982, which is three years before the complaint was filed. By granting Chevron's motion for partial summary judgment on the statute of limitations issue, the district court impliedly held that the statute of limitations was tolled by the filing of the complaint. Sierra Club contends on appeal that if this was the district court's holding, it was error.[4]
 
 
 35
 As Sierra Club notes, the principal purpose of statutes of limitations is to provide notice of claims and to prevent plaintiffs from "sleeping on their rights." The Supreme Court stated in Order of R.R. Telegraphers v. Railway Express Agency, 321 U.S. 342, 348-49, 64 S.Ct. 582, 586, 88 L.Ed. 788 (1944):
 
 
 36
 Statutes of limitation, like the equitable doctrine of laches, in their conclusive effects are designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them.
 
 
 37
 When Sierra Club filed notice of its intent to sue, it put Chevron on notice of the claims to be raised. By notifying Chevron of the impending enforcement action, Sierra Club ensured that Chevron would not be surprised when the action was filed. The question remains, however, whether it would otherwise be unjust to Chevron if the filing of notice of intent to sue is held to toll the statute of limitations.
 
 
 38
 In this circuit, the rule is that "if prior resort to an administrative body is a prerequisite to review in court, the running of the limitation period will be tolled during the administrative proceeding." Nichols v. Hughes, 721 F.2d 657, 660 (9th Cir.1983); see also Crown, Cork & Seal Co. v. Parker, 462 U.S. 345, 353-54, 103 S.Ct. 2392, 2397, 76 L.Ed.2d 628 (1983) (statute of limitations is tolled while class certification is pending); Mount Hood Stages, Inc. v. Greyhound Corp., 616 F.2d 394, 396 (9th Cir.) (statute of limitations is tolled in federal court during pendency of related proceedings before Interstate Commerce Commission), cert. denied, 449 U.S. 831, 101 S.Ct. 99, 66 L.Ed.2d 36 (1980). We hold that the sixty-day notice requirement of 33 U.S.C. Sec. 1365 is analogous to a requirement of prior resort to an administrative body. See Atlantic States Legal Found., 635 F.Supp. at 288. By creating the sixty-day notice requirement, Congress has forced a sixty-day delay on citizen plaintiffs that does not apply to the EPA or state agencies seeking enforcement of permit terms. Congress deemed this delay necessary to allow the EPA or state agencies to take action on permit violations that they might have overlooked. See S.Rep. No. 414, 92d Cong., 2d Sess., reprinted in 1972 U.S.Code Cong. & Admin.News 3668, 3745. If the rule were that only the filing of the citizen plaintiffs complaint tolls the statute of limitations, then citizen plaintiffs would be faced with a statute of limitations that is effectively two months shorter than that imposed on the EPA and state agencies. As indicated above, we think the statute of limitations should be the same for citizen plaintiffs and the EPA.[5] Thus, we hold that in citizen enforcement actions the five-year statute of limitations period is tolled sixty days before the filing of the complaint, to accommodate the statutorily-mandated sixty-day notice period.
 
 II. Prior Regional Board Action as Bar
 
 39
 Chevron moved for summary judgment on the ground that the Regional Board's prior enforcement action against Chevron bars any further enforcement action by Sierra Club. The district court denied Chevron's motion.
 
 
 40
 As discussed above, citizen enforcement suits may not be commenced if the EPA Administrator or a state agency is "diligently prosecuting" an enforcement action "in a court of the United States, or a State." 33 U.S.C. Sec. 1365(b)(1)(B). Sierra Club contends that (1) action within a state administrative agency is never action in a court; (2) in any case, the Regional Board in this case did not serve as the functional equivalent of a court; and (3) in any case, the Regional Board failed diligently to prosecute its enforcement action. Chevron argues that the Regional Board proceedings do constitute action in a court and that the Regional Board diligently prosecuted the action.
 
 
 41
 A. Agency Proceeding as Action "in a Court"
 
 
 42
 Two Courts of Appeal have addressed the meaning of action "in a court" and have arrived at different conclusions. The Third Circuit, in Baughman v. Bradford Coal Co., Inc., 592 F.2d 215 (3d Cir.) (involving the Clean Air Act's citizen suit provision, which is for present purposes identical to the citizen suit provision of the Clean Water Act), cert. denied, 441 U.S. 961, 99 S.Ct. 2406, 60 L.Ed.2d 1066 (1979), and SPIRG v. Fritzsche, Dodge & Olcott, Inc., 759 F.2d 1131 (3d Cir.1985), has held that if agency action is the functional equivalent of "action in a court," then the requirements of 33 U.S.C. Sec. 1365 are satisfied, and a citizen enforcement suit is barred. The Second Circuit, in Friends of the Earth v. Consolidated Rail Corp., 768 F.2d 57 (2d Cir.1985), has held that 33 U.S.C. Sec. 1365 unambiguously requires that action be in a literal "court," so that agency action outside of a court will never bar a citizen enforcement suit.
 
 
 43
 The Third Circuit in Baughman and SPIRG indicated that under some circumstances agency action constitutes action in a court. In SPIRG, the court explained that a "dual inquiry" must be made before an agency proceeding can be characterized as action in a court. SPIRG, 759 F.2d at 1137. The court stated:
 
 
 44
 The first question to be answered is whether the coercive powers that the administrative agency possesses compel compliance with effluent limitations (to determine whether the agency has "the power to accord relief which is the substantial equivalent to that available to the EPA in federal court"). The second inquiry concerns the procedural similarities the agency proceeding might have to a suit in federal court (to determine, among other things, whether citizens have a right to intervene in the agency proceeding).
 
 
 45
 Id. The SPIRG court concluded that an EPA administrative enforcement action does not qualify as a court action. The court explained that the EPA is without power to enforce its compliance or consent orders, lacks the power to impose administrative remedies, does not allow citizens to intervene in its negotiation and enforcement process, and provides none of the procedural safeguards that are provided in federal court proceedings. SPIRG, 759 F.2d at 1138-39.
 
 
 46
 The Second Circuit, while acknowledging the approach taken by the Third Circuit, declined to follow it. In Friends of the Earth, 768 F.2d at 62, the Second Circuit found the language of 33 U.S.C. Sec. 1365 to be unambiguous; the statute refers to action in a "court," and an administrative proceeding is not an action in a court. The court also examined the legislative history of 33 U.S.C. Sec. 1365 and concluded that it "failed to disclose any indication that Congress meant other than what it plainly stated in section [1365]." Id. at 63.
 
 
 47
 We prefer the Second Circuit's reading of section 1365 over the Third Circuit's reading. Section 1365 does refer specifically to "courts," and it makes no direct or veiled reference to any type of administrative proceeding. As Sierra Club notes, the citizen suit provisions of various acts, including the Toxic Substances Control Act, 15 U.S.C. Sec. 2619(b)(1)(B), the Endangered Species Act, 16 U.S.C. Sec. 1540(g)(2), the Marine Protection, Research and Sanctuaries Act, 33 U.S.C. Sec. 1415(g)(2), and the Resource Conservation and Recovery Act, 42 U.S.C. Sec. 6972(b), all bar citizen suits if the government is prosecuting either a court action or an administrative action. This contrast dispels any lingering ambiguity in the term "courts" as used in section 1365. In addition, Chevron has cited no legislative history that would justify the extraordinary step of ignoring the plain language of the statute. Our own review of the legislative history indicates only that citizen suits should be handled liberally, because they perform an important public function: "It is the Committee's intent that enforcement of these control provisions be immediate, that citizens should be unconstrained to bring these actions, and that the courts should not hesitate to consider them." S.Rep. No. 414, 92d Cong., 2d Sess., reprinted in 1972 U.S.Code Cong. & Admin.News 3746.[6]
 
 
 48
 Because section 1365 is unambiguous and the legislative history supports a literal reading of section 1365, we hold that under 33 U.S.C. Sec. 1365, a citizen enforcement suit is not precluded by nonjudicial enforcement action by the Regional Board.
 
 CONCLUSION
 
 49
 We REVERSE the district court's order of partial summary judgment for Chevron. We hold that the five-year statute of limitations provided in 28 U.S.C. Sec. 2462 applies to citizen enforcement suits and that the statute of limitations is tolled sixty days before the citizen plaintiff files its complaint. We AFFIRM the district court's holding that the Regional Board's prior enforcement action against Chevron does not bar Sierra Club from bringing this citizen enforcement suit.
 
 
 50
 AFFIRMED in part and REVERSED in part.
 
 
 
 [1]
 An "effluent limitation" is "any restriction established by a State or the Administrator [of the EPA] on quantities, rates, and concentrations of chemical, physical, biological, and other constituents which are discharged from point sources ... including schedules of compliance." 33 U.S.C. Sec. 1362(11). A point source is "any discernible, confined and discrete conveyance ... from which pollutants are or may be discharged." Id. Sec. 1362(14)
 
 
 [2]
 The district court cited Ward v. Caulk, 650 F.2d 1144 (9th Cir.1981) in support of its statement that "[t]he court is bound ... to apply the most analogous state statute." In Ward, we stated that the "relevant statute of limitations for federally created causes of action which do not provide their own filing periods is that of the state most connected with the action." Id. at 1147. We held that actions brought under 42 U.S.C. Secs. 1981 and 1983 are governed by state limitations periods. In that case, no "relevant" federal statutes existed, so that resort to state law was proper
 
 
 [3]
 A qui tam action is "a civil proceeding in which an informer sues for the Government, as well as for himself, to recover a penalty under a particular statute." Sierra Club v. Andrus, 610 F.2d 581, 591 n. 17 (9th Cir.1979)
 
 
 [4]
 Chevron contends that Sierra Club did not raise this argument in the district court. This is incorrect. In its memorandum in opposition to Chevron's summary judgment motions, Sierra Club argued that the statute of limitations should be tolled by the filing of Sierra Club's notice of its intent to file the enforcement action. Sierra Club did not argue this point extensively, but that is explained by the fact that Sierra Club's primary argument before the district court was that no statute of limitations applies to citizen's enforcement suits, making the question of tolling irrelevant
 
 
 [5]
 We decline to adopt Sierra Club's argument that the filing of a citizen plaintiff's notice of intent to sue tolls the statute of limitations, even in cases in which the citizen plaintiff files its complaint more than sixty days after filing notice of intent to sue. Under this approach, citizen plaintiffs would be able to file notice of intent to sue and then delay in pursuing their rights. This approach would thus accord citizen plaintiffs enforcement power greater than that of federal and state agencies
 
 
 [6]
 The one piece of legislative history that Chevron cites is the following statement:
 It should be emphasized that if the agency had not initiated abatement proceedings following notice or if the citizen believed efforts initiated by the agency to be inadequate, the citizen might choose to file the action. In such case, the courts would be expected to consider the petition against the background of the agency action and could determine that such action would be adequate to justify suspension, dismissal, or consolidation of the citizen petition. On the other hand, if the court viewed the agency action as inadequate, it would have jurisdiction to consider the citizen action notwithstanding any pending agency action.
 Cross-Appellant's Opening Brief at 28 n. 26 (quoting S.Rep. No. 414, 92d Cong., 2d Sess., reprinted in 1972 U.S.Code Cong. & Admin.News 3746.
 This statement has no bearing on whether administrative actions may qualify as court actions under section 1365. The statement only indicates that in disposing of a citizen enforcement suit, a district court may take into account prior enforcement action taken by an agency. It does not at all suggest that such prior action should constitute a bar to citizen action.