**CATELLUS DEVELOPMENT CORPORATION, et al., Plaintiffs,**

v.

**L.D. McFARLAND COMPANY, et al., Defendants.**

**Civ. No. 91–685–JO.**

United States District Court, D. Oregon.

Dec. 19, 1995.

Steven R. Schnell, Ronald T. Adams, Black Helterline, Portland, OR, Mariah Baird, John F. Barg, R. Christopher Locke, Landels Ripley & Diamond, San Francisco, CA, for plaintiffs.

Richard S. Gleason, Scott J. Kaplan, Stoel Rives Boley Jones & Grey, Portland, OR, Daniel H. Skerritt, Ater Wynne Hewitt Dodson & Skerritt, Portland, OR, Colin G. Harris, Edward G. McGrath, Holme Roberts & Owen, Denver, CO, for defendants.

## OPINION AND ORDER

ROBERT E. JONES, Judge.

This is a cost recovery action under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601–9675, and the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6901–6992k, with supplemental state claims. Plaintiffs Catellus Development Corporation ("Catellus") and Santa Fe Pacific Properties ("SF Pacific") are suing Defendants L.D. McFarland Company ("McFarland") and Southern Pacif- ic Transportation Company ("SPTCo") who owned and operated a creosote treatment facility on property now owned by Plaintiffs.

### Summary of Allegations

The historical facts regarding the parties and the property are convoluted; therefore, I will set them forth chronologically. From the 1920's until 1956, Southern Pacific Company leased a portion of its property (hereinafter "Property") in Milwaukie, Oregon to McFarland who treated wooden poles with creosote on that site. The Property has remained vacant since 1956.

In 1969, Southern Pacific Company, and all its property, merged with Southern Pacific Transportation Company ("SPTCo"). SPTCo "expressly assumed liability for obligations of any kind whatsoever, without exception, owned, incurred or assumed by Southern Pacific Company, including but not limited to, contracts, leases, liabilities and duties pursuant to the terms of the Merger Agreement." 3rd. Am.Compl. ¶ 11.

Ten years later, in 1979, SPTCo split the Property used for creosote treatment into two parcels and then sold Parcel I to its parent corporation and retained Parcel II. During the next two years, both Parcels I and II were conveyed to the Lane Family Company, who transferred them to the Southern Pacific Industrial Development Company in 1981.

In 1988, Southern Pacific Industrial Development Company, and all its property, merged with Santa Fe Pacific Realty Corporation. Thereafter, Santa Fe Pacific Realty Corporation conveyed the Property to its wholly owned subsidiary, Plaintiff SF Pacific. In 1990, Santa Fe Pacific Realty Corporation changed its name to Catellus Development Corporation (Plaintiff Catellus).

After SF Pacific received the Property, it conducted investigations of the Property which revealed soil and groundwater contamination. The Department of Environmental Quality ("DEQ") directed Plaintiffs Catellus and SF Pacific to further investigate the contamination emanating from the Property. Plaintiffs allege that the contamination was caused by activities associated with McFarland's creosote treatment plant.

Plaintiffs claim that during SPTCo's ownership of the Property, McFarland operated a "facility" involving "hazardous substances" as well as "hazardous waste" and "solid waste," as defined under CERCLA and RCRA. Plaintiffs further allege that hazardous substances and wastes were "spilled, leaked, discharged, disposed or otherwise released to the environment during the period that McFarland leased the property from Southern Pacific Company, *i.e.,* from the 1920s until 1956, resulting in contamination at and emanating from the Property." 3rd. Am.Compl. ¶ 22. As a result of Defendants' actions, Plaintiff insists that it incurred the following damages:

(1) response costs under CERCLA § 101(25) and remediation costs under Oregon Revised Statutes ("ORS") 465.200,

(2) loss of the free use and enjoyment of the Property,

(3) loss in the Property's value and lost opportunities to sell and develop the Property,

(4) miscellaneous environmental costs resulting from the contamination,

(5) costs resulting from government oversight and amounts paid to DEQ,

(6) costs resulting from future actions and administrative proceedings arising from the presence of contamination.

3rd. Am.Compl. ¶ 23.

In order to recover the damages listed above, Plaintiffs advance eleven claims for relief:

(1) First Claim—Plaintiffs seek a declaration that McFarland and SPTCo are liable under CERCLA for response costs because McFarland operated a facility containing hazardous substances and SPTCo owned the Property while McFarland operated its creosote wooden pole treating facility;

(2) Second Claim—under § 107(a) of CERCLA, Defendants are liable for Plaintiffs' response costs because they owned and operated a facility from which hazardous substances were released;

(3) Third Claim—Plaintiffs seek a declaration that Defendants are liable under ORS 465.255 for remedial costs incurred by Plaintiffs because McFarland operated a facility from which hazardous substances were released, and SPTCo exacerbated the contamination by its acts and omissions;

(4) Fourth Claim—under ORS 465.255, Defendants are liable for all remedial action costs incurred by Plaintiffs because their actions caused and/or exacerbated the contamination;

(5) Fifth Claim—under ORS 465.325(6)(a), Plaintiffs seek contribution from Defendants.

(6) Sixth Claim—Plaintiffs seek a declaration that Defendants are liable under RCRA for response costs incurred by Plaintiffs because they "contributed to the handling, storage, transportation and/or disposal of a solid and/or hazardous waste at or adjacent to the Property, which presents an imminent and substantial endangerment to health and the environment";

(7) Seventh Claim—under § 6972(a)(1)(B) of RCRA, Defendants are liable for Plaintiffs' response costs and are obligated to investigate and remediate the releases of hazardous and solid waste emanating from the Property;

(8) Eighth Claim—McFarland was negligent by failing to exercise reasonable care in handling the hazardous substances and wastes, and by failing to clean up the hazardous substances and wastes;

(9) Ninth Claim—SPTCo was negligent because it knew or reasonably should have known that releases of hazardous substances and wastes occurred on the Property as a result of McFarland's operations which were not adequately cleaned up;

(10) Tenth Claim—as a result of the release of hazardous substances and waste, Defendants created a nuisance within the meaning of ORS 105.505; and

(11) Eleventh Claim—by allowing a release of hazardous substances and waste which damaged the Property, McFarland breached its duty under ORS 105.805 to prevent waste.

In response, Defendants collectively move to dismiss Plaintiffs' First, Second, Third, Fourth, Sixth, and Seventh Claims. After full consideration of the arguments, Defendants' Motions to Dismiss (# 161, # 163) are DENIED.

### STANDARD

■■■ A Rule 12(b)(6) motion to dismiss for failure to state a claim can be granted only if it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim which would entitle it to relief. *Parks School of Business, Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir.1995); *Mountain High Knitting, Inc. v. Reno*, 51 F.3d 216, 218 (9th Cir.1995). All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. *National Wildlife Federation v. Espy*, 45 F.3d 1337, 1340 (9th Cir.1995); *Everest and Jennings v. American Motorists Ins. Co.*, 23 F.3d 226, 228 (9th Cir.1994).

### DISCUSSION

### I. Plaintiffs' First, Second, Third, and Fourth Claims

#### A. Arguments

Defendants move to dismiss Plaintiffs' First and Second Claims for cost recovery under CERCLA because Plaintiffs have already been adjudged partially liable for the response costs;[1] thus, Plaintiffs' may only

sue for contribution under § 113, codified at 42 U.S.C. § 9613, not full cost recovery under § 107, codified at 42 U.S.C. § 9607. Furthermore, Defendants contend that this reasoning should also apply to the Third and Fourth Claims under ORS 465.255 (Oregon CERCLA) because the state and federal statutes are interpreted consistently with each other.

Plaintiffs respond by arguing that the CERCLA and state law cost recovery claims are not pleaded as "pure" cost recovery claims, but rather are combined as liability and contribution claims. On their First and Second Claims, Plaintiffs merely seek a declaration that Defendants are liable under § 107 so that they can proceed under § 113 for contribution. Plaintiffs contend that the same approach must be applied to the Third and Fourth Claims for contribution under state law: first determine liability under § 465.255 and then allocate the costs by contribution under § 465.325(6)(a).

#### B. Analysis

■■■ CERCLA provides two different causes of action by which a party may recover some or all of the response costs incurred as a result of the release of hazardous substances: a cost recovery action under § 107(a), 42 U.S.C. § 9607(a), and a contribution action under § 113(f)(1), 42 U.S.C. § 9613(f)(1).[2] Section 107(a) permits a party that has incurred "necessary costs of re-

---

1. On cross-motions for partial summary judgment, Judge Jelderks held that Plaintiffs were potentially liable parties under both federal CERCLA and Oregon CERCLA. In so holding, Judge Jelderks concluded that Plaintiffs could not escape liability as "innocent purchasers" because they did not conduct "all appropriate inquiry" into the history of the property; thus, they knew or should have known of the contamination at the time they purchased the property. Findings and Recommendations at 25–28 (May 14, 1993) (adopted by Judge Redden on July 27, 1993).

2. Section 107(a) reads in part:
 Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section—
 (1) the owner and operator of a vessel or a facility,
 (2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,

(3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and
(4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for—
(A) all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe not inconsistent with the national contingency plan;
(B) any other necessary costs of response incurred by any other person consistent with the national contingency plan;

sponse" consistent with the national contingency plan to sue four different potentially responsible parties ("PRPs"): (1) present owners of the site, (2) past owners of the site, (3) off-site generators and others who arranged for treatment and disposal at the site, and (4) transporters who brought waste to the site.[3] Similarly, § 113(f)(1) permits "an action by and between jointly and severally liable parties for an appropriate division of the payment one of them has been compelled to make." *United Technologies v. Browning-Ferris Industries, Inc.*, 33 F.3d 96, 99 (1st Cir.1994) (quoting *Akzo Coatings, Inc. v. Aigner Corp.*, 30 F.3d 761, 764 (7th Cir. 1994)), *cert. denied*, —— U.S. ——, 115 S.Ct. 1176, 130 L.Ed.2d 1128 (1995); *see also United States v. Colorado & Eastern R. Co.*, 50 F.3d 1530, 1536 (10th Cir.1995). However, the critical distinction between the two sections is that under § 107, the court merely determines whether the party is jointly and severally liable, without regard to the amount of fault; but under § 113, the court also divides the fault of the parties, using equitable factors.[4]

Whether a party sues under § 107 or § 113 may be important for at least two reasons. First, either a three-year (for removal actions) or a six-year statute of limitations (for remedial actions) applies to § 107 cost recovery actions, but § 113 contribution claims are governed by only a three-year statute of limitations which begins running from the time of judgment—there is no judgment in this action. Section 113(g)(2), (3). Second, § 107 allows for complete indemnity rather than merely an allocation of responsibility as under § 113. *United Technologies*, 33 F.3d at 100; *see also O'Neil v. Picillo*, 883 F.2d 176, 178–179 (1st Cir.1989) (distinguishing joint and several liability under § 107

---

(C) damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss resulting from such a release; and

(D) the costs of any health assessment or health effects study carried out under section 9604(i) of this title.

The amounts recoverable in an action under this section shall include interest on the amounts recoverable under subparagraphs (A) through (D). Such interest shall accrue from the later of (i) the date payment of a specified amount is demanded in writing, or (ii) the date of the expenditure concerned.

Section 113(f)(1) provides:

Any person may seek contribution from any other person who is liable or potentially liable under section [107(a)] of this title, during or following any civil action under section [106] of this title or under section [107(a)] of this title. Such claims shall be brought in accordance with this section and the Federal Rules of Civil Procedure, and shall be governed by Federal law. In resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate. Nothing in this subsection shall diminish the right of any person to bring an action for contribution in the absence of a civil action under section [106] of this title or section [107] of this title.

3. "Liability is established under CERCLA § 107(a) if:

(1) the site in question is a facility as defined in § 101(9);

(2) the defendant is a responsible person under § 107(a);

(3) a release or a threatened release of a hazardous substance has occurred; and

(4) the release or the threatened release has caused the plaintiff to incur response costs." *Kerr-McGee Chemical v. Lefton Iron & Metal*, 14 F.3d 321, 325 (7th Cir.1994).

4. The most widely used factors are called the "Gore factors:"

1. the ability of the parties to demonstrate that their contribution to a discharge, release, or disposal of a hazardous waste can be distinguished;

2. the amount of hazardous waste involved;

3. the degree of toxicity of the hazardous waste;

4. the degree of involvement by the parties in the generation, transportation, treatment, storage, or disposal of the hazardous waste;

5. the degree of care exercised by the parties with respect to the hazardous waste concerned, taking into account the characteristics of such hazardous waste; and

6. the degree of cooperation by the parties with Federal, State, or local officials to prevent any harm to the public health or the environment.

*Control Data Corp. v. S.C.S.C. Corp.*, 53 F.3d 930, 935 (8th Cir.1995) (citing Nagle, *CERCLA, Causation, and Responsibility*, 78 Minn.L.Rev. 1493, 1522–23, n. 133 (1994)). "A primary focus of these factors is the harm that each party causes the environment. [citation omitted]. Those parties who can show that their contribution to the harm is relatively small in terms of amount of waste, toxicity of the waste, involvement with the waste, and care, stand in a better position to be allocated a smaller portion of response costs." *Control Data* at 935.

from divisible responsibility under § 113(f)(1) which was "designed to mitigate the harshness of joint and several liability"), *cert. denied,* 493 U.S. 1071, 110 S.Ct. 1115, 107 L.Ed.2d 1022 (1990). Accordingly, PRPs may not receive complete indemnity under § 107, but rather must seek contribution under § 113(f)(1) because the two types of actions are " 'distinct and do not overlap.' " *Gould Electronics, Inc. v. NL Industries, Inc.,* slip op. at 5, No. 91–1091–RE (D.Or. May 22, 1995) (held that liable parties may allege a § 107 claim but it is governed by the contribution provisions of § 113; only nonliable parties may pursue "pure § 107 claims") (quoting *United Technologies,* 33 F.3d at 100).

However, Defendants are not arguing that Plaintiffs' CERCLA suit is barred by the statute of limitations,[5] therefore the distinction between the two sections will not affect the outcome of this case. Nonetheless, I wish to resolve the issue of which statutory provision governs Plaintiffs' lawsuit.

The Superfund Amendments and Reauthorization Act of 1986 ("SARA") included a provision—§ 113(f)—that expressly created a cause of action for contribution. *Key Tronic Corp. v. U.S.,* — U.S. —, —, 114 S.Ct. 1960, 1966, 128 L.Ed.2d 797 (1994). Prior to SARA, courts implicitly authorized contribution actions under § 107(a)(4)(B) which allows recovery for "necessary costs of response incurred by any other person consistent with the [NCP]." *Key Tronic* at —, n. 7, 114 S.Ct. at 1965, n. 7 (citing pre-SARA cases recognizing private right of contribution under § 107(a)(4)(B)). After SARA, § 113(f)(1) was added to expressly permit contribution actions, but it also stated that "[n]othing in this subsection shall diminish the right of any person to bring an action for contribution in the absence of a civil action under [§ 106] or [§ 107]." § 113(f)(1).

█ In the present action, it could be argued that under a strict reading of the language of § 107 and § 113, Plaintiffs' lawsuit for response costs does not lie under either provision; Plaintiffs cannot sue under the express provisions of § 107 because they are PRPs, *see United Technologies,* 33 F.3d at 100; *Gould,* slip op. at 5, and they cannot sue under § 113 because they have neither been ordered by EPA to clean up the site nor been sued by a non-liable party for cost recovery. *See* § 113 ("Any person may seek contribution from any [PRP], *during or following any civil action* under [§ 106—EPA order] or under [§ 107(a)—suit by non-liable party].") However, as stated above, § 113(f)(1) expressly reserved actions for contribution in the absence of a civil action under § 106 or § 107. Therefore, a private right of contribution under § 107(a) continues to exist as a viable cause of action.[6] *See In re Hemingway Transport, Inc.,* 993 F.2d 915, 931 (1st Cir.1993) ("in the event the private-action plaintiff itself is potentially 'liable' to the EPA for response costs, and thus is akin to a joint 'tortfeasor,' section [§ 107(a)(4)(B) ] serves as a *pre-enforcement* analog to the 'impleader' contribution action permitted under [§ 113(f) ]."), *cert. denied,* — U.S. —, 114 S.Ct. 303, 126 L.Ed.2d 251 (1993); *see also (United Technologies,* 33 F.3d at 99, n. 8) (acknowledging that "a PRP who spontaneously initiates a cleanup without governmental prodding" falls outside the "statutory parameters established for an express cause of action for contribution," but nonetheless "might be able to pursue an implied right of action for contribution under [§ 107].")

Because Plaintiffs' lawsuit technically falls outside "the statutory parameters established for an express cause of action for contribution" under § 113(f), *Id.,* the proper cause of action for Plaintiffs is actually under § 107(a)(2)(B). *See Hemingway* at 931 (PRP who sought contribution was required to include the statutory prerequisite of § 107(a)(4)(B) in its complaint).[7]

---

5. Defendants assert the statute of limitations defense only against the RCRA claims which are addressed below.

6. Admittedly, however, § 113(f)(1) is the applicable provision in most contribution actions. The present action is merely the peculiar situation

which falls outside of § 113(f)(1) where a PRP has not been ordered by EPA or sued by another party, but nonetheless incurs response costs.

7. This Court reads §§ 107(a)(4)(A)–(D) as applying to all PRP's under § 107(a). Therefore, there is no difference between § 107(a)(2)(B) and § 107(a)(4)(B), except that § 107(a)(2) applies to

■ There is little practical effect of this distinction because the substance of Plaintiffs' action is one for contribution under CERCLA. Although Plaintiffs' First and Second Claims for contribution technically fall under § 107(a)(2)(B), this Court will equitably apportion liability in the same manner as under § 113(f)(1) because a contribution action under § 107(a)(2)(B) provides the same remedy as a contribution action under § 113(f)(1).

■ With regard to Oregon CERCLA, the contribution provision under ORS § 465.325(6)(a) does not contain the same limitations as § 113(f)(1), but the cost recovery provision under § 465.255, like § 107(a), is limited to parties who are not themselves PRPs. Because, the interpretation of the cost recovery scheme under federal CERCLA similarly applies to the interpretation of the Oregon CERCLA statute,[8] *see Badger v. Paulson Inv. Co.*, 311 Or. 14, 21, 803 P.2d 1178, 1182 (Ore.1991), Plaintiffs' Third and Fourth Claims under Oregon CERCLA shall be construed as § 465.325(6)(a) contribution actions. Accordingly, Defendants' Motion to Dismiss Plaintiffs' First, Second, Third, and Fourth Claims is DENIED.

## II. Plaintiffs' Sixth and Seventh Claims

### A. Arguments

Defendants move to dismiss Plaintiffs' Sixth and Seventh Claims for cost recovery under RCRA because Plaintiffs failed to file suit within the applicable statute of limitations. Alternatively, Defendants argue that the Court does not have jurisdiction to award restitution of cleanup costs under RCRA because such relief is neither expressly nor impliedly available under RCRA.

Plaintiffs contend that no statutes of limitation apply to RCRA citizen suits. Furthermore, the Ninth Circuit has interpreted the language of the RCRA citizen provision to permit the district court to order restitution of cleanup costs.

### B. Analysis
#### 1. Restitution Under RCRA

In 1991, Plaintiffs filed this action against Defendants, *inter alia*, under the RCRA citizen suit provision, 42 U.S.C. § 6972(a)(1)(B),[9]

---

past owners and operators, and § 107(a)(4) applies to transporters.

8. Section 465.255 reads in part:
 (1) The following persons shall be strictly liable for those remedial action costs incurred by the state or any other person that are attributable to or associated with a facility and for damages for injury to or destruction of any natural resources caused by a release:
 (a) Any owner or operator at or during the time of the acts or omissions that resulted in the release.
 (b) Any owner or operator who became the owner or operator after the time of the acts or omissions that resulted in the release, and who knew or reasonably should have known of the release when the person first became the owner or operator.
 (c) Any owner or operator who obtained actual knowledge of the release at the facility during the time the person was the owner or operator of the facility and then subsequently transferred ownership or operation of the facility to another person without disclosing such knowledge.
 (d) Any person who, by any acts or omissions, caused, contributed to or exacerbated the release, unless the acts or omissions were in material compliance with applicable laws, standards, regulations, licenses or permits.
 (e) Any person who unlawfully hinders or delays entry to, investigation of or removal or remedial action at a facility.

Section 465.325(6)(a) provides: "Any person may seek contribution from any other person who is liable or potentially liable under ORS 465.255. In resolving contribution claims, the court may allocate remedial action costs among liable parties using such equitable factors as the court determines are appropriate."

9. Section 6972(a)(1)(B) permits,
 any person [to] commence a civil action on his own behalf * * *
 (B) against any person, including the United States, and any other governmental instrumentality or agency, to the extent permitted by the eleventh amendment to the Constitution, and including any past or present generator, past or present transporter, or past or present owner or operator of a treatment, storage, or disposal facility, who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment * * *.
 * * * * * *
 The district court shall have jurisdiction * * * to restrain any person who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste referred to in paragraph (1)(B), to order such person to take such other action as may be necessary, or both * * *.

because Defendants' actions regarding the creosote contamination allegedly "present an imminent and substantial endangerment to health or the environment." 3rd. Am.Compl. ¶¶ 55, 61. Plaintiffs seek restitution of their costs incurred in response to the contamination, as well as a declaration that Defendants are liable under RCRA for future investigation and remediation costs, and attorney fees.

The issue of whether response costs are available under the RCRA citizen suit provision has created a split among the circuits. Compare *Furrer v. Brown,* 62 F.3d 1092, 1100–02 (8th Cir.1995) (no right of action for cleanup costs under RCRA citizen suit provision); *Walls v. Waste Resource Corp.,* 761 F.2d 311, 316 (6th Cir.1985); *325–343 E. 56th Str. Corp. v. Mobil Oil Corp.,* 906 F.Supp. 669, 684–86 (D.D.C.1995); *Prisco v. State of New York,* 902 F.Supp. 374, 394–95 (S.D.N.Y. 1995); *Murray v. Bath Iron Works Corp.,* 867 F.Supp. 33, 42 (D.Maine 1994), with *KFC Western, Inc. v. Meghrig,* 49 F.3d 518, 523–24 (9th Cir.1995) (allowing claim for equitable restitution of cleanup costs pursuant to RCRA citizen suit provision), *cert. granted,* —— U.S. ——, 116 S.Ct. 41, 132 L.Ed.2d 922 (1995) and *United States v. Price,* 688 F.2d 204, 213–14 (3d. Cir.1982).

 If this Court were writing from a clean slate, I would conclude that response costs under RCRA are not available based upon (1) the plain language of the statute, (2) what I interpret to be the congressional intent, and (3) what I am convinced represents the proper judicial interpretation from other circuits. Nonetheless, no matter how com-

pelling I may believe the above represents the correct result, the *KFC Western* decision forecloses what I consider to be the proper disposition on this issue. Therefore, I must find that Plaintiffs may sue for restitution of response costs under the RCRA citizen suit provision, based upon the 2 to 1 panel decision in *KFC Western, Inc. v. Meghrig,* 49 F.3d 518, 523–24 (9th Cir.1995).[10]

The Supreme Court granted certiorari in *KFC Western* to apparently settle the split among the circuits. Therefore, when and if the Supreme Court resolves the issue, I will sua sponte conform my decision to match that of the Supreme Court.

### 2. Statute of Limitations

In 1993, this Court adopted Findings and Recommendations by Judge Jelderks who concluded that Catellus' predecessor, Southern Pacific Industrial, knew or should have known of the contamination in the late 1970's or early 1980's. Accordingly, Defendants argue that Plaintiffs' RCRA suit is untimely because it was filed in 1991 more than five years after they knew or should have known of the contamination.

RCRA contains no statute of limitations. Generally, where federal environmental laws lack a statute of limitations, courts apply the "relevant" federal statute of limitations which is often the five-year federal limitation found in 28 U.S.C. § 2462.[11] *See, e.g., United States v. Walsh,* 8 F.3d 659, 662 (9th Cir. 1993) (court applied § 2462 five year limitation period to civil penalty action under Clean Air Act), *cert. denied,* —— U.S. ——,

---

**10.** Defendants submitted a slip opinion from the United States District Court for the Northern District of California on the same day scheduled for oral argument on these motions. In that case, the court interpreted *KFC Western* to limit recovery under RCRA to only "an innocent party." *Helix v. Southern Pacific Transportation Company,* No. 92–2312–DLJ, slip op. at 8 (N.D.Cal. November 20, 1995). Defendants urge this Court to apply that holding to bar Plaintiffs from recovering under RCRA because they knew or should have known of the contamination at the time they purchased the Property; thus, they are not "innocent parties."

The *Helix* decision is neither precedential nor does it operate to bar Plaintiffs' RCRA action. As I stated at oral argument, this Court does not interpret *KFC Western* as only applying to "innocent parties." Furthermore, I agree with Plain-

tiffs' contention that they would be considered "innocent parties" because they have no connection with the historical release of hazardous waste on the Property. Nothing in *KFC Western* suggests that Plaintiffs must satisfy the innocent purchaser defense under § 107(b)(3) of CERCLA (*i.e.* perform "all appropriate inquiry" before purchasing) to qualify for recovery under RCRA. Accordingly, I decline to apply *Helix* to the present action.

**11.** Section 2462: "Except as otherwise provided by Act of Congress, an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued if, within the same period, the offender or the property is found within the United States in order that proper service may be made thereon."

114 S.Ct. 1830, 128 L.Ed.2d 459 (1994); *Sierra Club v. Chevron U.S.A., Inc.*, 834 F.2d 1517, 1522 (9th Cir.1987) ("Because citizen enforcement suits are analogous to EPA enforcement suits * * *, we hold that [§ 2462] applies to citizen enforcement actions [under the Clean Water Act (CWA) ]");[12] *3M Co. (Minnesota Min. and Mfg.) v. Browner*, 17 F.3d 1453, 1456–57 (D.C.Cir.1994) (court applied § 2462 five year limitation period to civil penalty action under Toxic Substances Control Act); *Public Interest Research Group of New Jersey, Inc. v. Powell Duffryn Terminals Inc.*, 913 F.2d 64, 74 (3d Cir.1990) (citing *Sierra Club* with approval, the court held that the federal five-year statute of limitations period applied to citizen suits under the CWA), *cert. denied*, 498 U.S. 1109, 111 S.Ct. 1018, 112 L.Ed.2d 1100 (1991). Using the same rationale, district courts have applied the § 2462 five-year limitation period to RCRA citizen suits. *See, e.g., Glazer v. American Ecology Environmental Services*, 894 F.Supp. 1029, 1044 (E.D.Tex.1995); *Bodne v. Geo A. Rheman Co., Inc.*, 811 F.Supp. 218, 221 (D.S.C.1993) (citing *Sierra Club*, 834 F.2d 1517 (9th Cir.1987), for the proposition that "28 U.S.C. § 2462 is the relevant federal statute of limitations to citizen actions under environmental statutes.") However, contrary to Defendants' contentions, § 2462 is not applicable to the present action because § 2462 only applies to "an action, suit or proceeding for the enforcement of any *civil*

*fine, penalty, or forfeiture*" which do not encompass restitution of response costs. 28 U.S.C. § 2462 (emphasis added).

██ In lieu of a statute of limitations, Plaintiff claims that the *KFC Western* decision mandates the application of the doctrine of laches to cost recovery citizen suits under RCRA. In *KFC Western*, the Ninth Circuit suggested in dicta, with little explanation, that the equitable defense of laches applies to RCRA cost recovery citizen suits: "By applying equitable defenses such as laches, courts can alleviate any unfairness that might be created by the lack of a limitations period for RCRA citizen suits." 49 F.3d 518, 522 (9th Cir.1995). However, this bare statement ignores the well-reasoned decision in *Sierra Club* where the Ninth Circuit explained: "Ordinarily, when a federal statute contains no limitations provision, a federal court should apply the 'most appropriate' statute of limitations provided by state law, unless there is a 'relevant' federal statute of limitations." 834 F.2d 1517, 1521 (quoting *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 462, 95 S.Ct. 1716, 1721, 44 L.Ed.2d 295 (1975)). Therefore, under *Sierra Club*, this Court must apply the "relevant" federal statute of limitations for RCRA citizen suits seeking restitution of response costs.[13]

██ Because Plaintiffs' claim for restitution is essentially a cost recovery claim, the CERCLA statute of limitations for recovery of response costs—§ 113(g)(2)—is the "relevant" federal statute of limitations.[14] If

---

**12.** In *Sierra Club*, the Ninth Circuit reasoned that because the five-year federal limitation period would apply to a government enforcement action, that same period should also apply where a citizen "effectively stands in the shoes of the EPA" by suing to enjoin and penalize Defendant's violations of its discharge permit. 834 F.2d at 1522.

**13.** "Though both laches and statute of limitations may give defendants repose, laches, unlike statute of limitations, is premised on the showing of prejudice. Thus * * * laches may apply whether or not any statutory limitations period runs." *Jackson v. Axton*, 25 F.3d 884, 888 (9th Cir. 1994). "However, it is extremely rare for laches to be effectively invoked when a plaintiff has filed his or her action before limitations in an analogous action at law has run." *Bouman v. Block*, 940 F.2d 1211, 1227 (9th Cir.1991) (citation omitted).

Although Defendants are not precluded from asserting the defense of laches in the present action, they have not raised that defense against

Plaintiffs' suit for restitution under RCRA. With regard to injunctive suits under RCRA, the doctrine of laches provides adequate protection to defendants.

**14.** Section 113(g)(2) contains two separate limitation periods. If the costs were incurred in a removal action (*i.e.*, cleaning up, preventing, monitoring, or assessing the release or threat of release of a hazardous substance, *see* 42 U.S.C. § 9601(23); § 101(23)), plaintiff must file suit within 3 years after completion of the removal action. § 113(g)(2)(A). However, if the costs were incurred for a remedial action (*i.e.*, "those actions consistent with permanent remedy taken instead of or in addition to removal actions in the event of a release or threatened release of a hazardous substance into the environment," *see* 42 U.S.C. § 9601(24); § 101(24)), plaintiff must file suit either within 6 years after initiation of the remedial action, or within 3 years after the removal action. § 113(g)(2)(B).

Therefore, in order to apply the correct limitations period, the court must first determine

§ 113(g)(2) were not applied, a party who was time-barred under CERCLA could circumvent the CERCLA statute of limitations merely by seeking the same response costs under RCRA. Consequently, I find that RCRA citizen suits for response costs must be brought within the same time periods as set forth in § 113(g)(2) of CERCLA: three years after completion of the removal action or six years after initiation of the remedial action. Because the CERCLA statute of limitations has not expired, Defendants' Motion to Dismiss Plaintiffs' Sixth and Seventh Claims is DENIED.

## CONCLUSION

Plaintiffs' First and Second Claims under CERCLA shall be construed as implied contribution claims under § 107(a)(2)(B). Similarly, Plaintiffs' Third and Fourth Claims for cost recovery under state law will be treated as contribution claims under ORS § 465.325(6)(a).

Furthermore, Ninth Circuit precedent compels this Court to find that Plaintiffs may seek restitution of response costs under the RCRA citizen suit provision. The "relevant" statute of limitations for this claim is governed by § 113(g)(2) of CERCLA.

IT IS ORDERED that Defendants' Motions to Dismiss (# 161, # 163) are DENIED.

---

whether the actions taken by plaintiff constitute a removal or remedial response. Incidentally, response actions which are characterized as removal or remedial under CERCLA, are also removal or remedial actions for the purposes of RCRA. *See, e.g., United States v. Rohm and Haas, Co.,* 2 F.3d 1265, 1274–75 (3rd. Cir.1993)

("if a particular government action qualifies as a 'removal action' under the definition contained in CERCLA, the government's costs are recoverable under [§ 107], regardless of what statutory authority was invoked by EPA in connection with its action.").