**COMMUNITY ASSOCIATION FOR RESTORATION OF THE ENVIRONMENT (CARE), a Washington nonprofit corporation, Plaintiff,**

v.

**SID KOOPMAN DAIRY,**
**et al., Defendants.**

**Community Association for Restoration of the Environment (CARE),**
**Plaintiff,**

v.

**Henry Bosma Dairy, et al., Defendants.**

**Community Association for Restoration of the Environment (CARE),**
**Plaintiff,**

v.

**DeRuyter Brothers Dairy,**
**et al., Defendants.**

**Community Association for Restoration of the Environment (CARE),**
**Plaintiff,**

v.

**SunnyVeld Dairy, et al., Defendants.**

**Nos. CY–98–3003–EFS, CY–98–3011–EFS, CY–98–3021–EFS, CY–98–3022–EFS.**

United States District Court,
E.D. Washington.

May 17, 1999.

Corrie Johnson Yackulic, Schroeter Goldmark & Bender, Seattle, WA, Charles M Tebbutt, Western Environmental Law Center, Eugene, OR, for Community Association for Restoration of the Environment.

Thomas Harding Wolfendale, Preston Gates & Ellis, Seattle, WA, for Sid Koopman Dairy, Sid Koopman.

**ORDER GRANTING IN PART PLAIN-
TIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT**

SHEA, District Judge.

BEFORE THE COURT is Plaintiff's Motion for Partial Summary Judgment (Ct.Rec.61, CY–98–3021–EFS) in all four CARE/dairy cases.[1] Oral argument was heard on March 18, 1999. Charles Tebbutt represented the Plaintiff; Jerry Neal, John Moore, and Todd Reuter represented the Defendants Henry Bosma and Liberty Dairies; John Ray Nelson and Lori Terry represented Defendants DeRuyter Brothers Dairy; and Thomas Wolfendale represented Defendants Sid Koopman Dairy and SunnyVeld Dairy, Mr. Wolfendale argued on behalf of all Defendants. This Order is entered to memorialize and supplement the oral rulings of the Court.

## I. BACKGROUND

Community Association for Restoration of the Environment ("CARE"), a Washington Nonprofit Corporation brought citizen suits pursuant to the Federal Water Pollution Control Act (Clean Water Act, hereinafter CWA), 33 U.S.C. § 1251, against the above-entitled Defendants. In August, 1998, the four CARE/dairy cases were consolidated for the limited purpose of certain discovery issues and for partial summary judgment on common issues of law and fact. Pursuant to the Court's Order consolidating the above-entitled matters, Plaintiff CARE has moved for partial summary judgment.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment will be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is enti-

---

1. There are four CARE dairy cases pending in this Court; *CARE v. Sid Koopman Dairy*, CY–98–3003–EFS; *CARE v. Henry Bosma Dairy*, CY–98–3011–EFS, *CARE v. DeRuyter Brothers Dairy*, CY–98–3021–EFS; and, *CARE v. SunnyVeld Dairy*, CY–98–3022–EFS.

tled to judgment as a matter of law." FED.R.CIV.P. 56(c). When considering a motion for summary judgment, a court may not weigh the evidence nor assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine issue for trial exists only if "the evidence is such that a reasonable jury could return a verdict" for the party opposing summary judgment. *Id.* at 248, 106 S.Ct. 2505. In other words, issues of fact are not material and do not preclude summary judgment unless they "might affect the outcome of the suit under the governing law." *Id.* There is no genuine issue for trial if the evidence favoring the non-movant is "merely colorable" or "not significantly probative." *Id.* at 249, 106 S.Ct. 2505.

The initial burden of demonstrating the absence of a genuine issue of material fact lies with the party requesting summary judgment. If the moving party challenges the ability of an opposing party to establish the existence of an essential element on which the opposing party bears the burden of proof at trial, the moving party need only inform the court that this is the basis of its motion and identify the portions of the record that demonstrate the absence of a genuine issue for trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

If the party requesting summary judgment demonstrates the absence of a genuine material fact, the party opposing summary judgment "may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial" or judgment may be granted as a matter of law. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. This requires the party opposing summary judgment to present or identify in the record evidence sufficient to establish the existence of any challenged element that is essential to that party's

case and for which that party will bear the burden of proof at trial. *See Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548, Failure to contradict the moving party's facts with counter affidavits or other responsive materials may result in the entry of summary judgment if the party requesting summary judgment is otherwise entitled to judgment as a matter of law. *See Anderson v. Angelone,* 86 F.3d 932, 934 (9th Cir.1996).

## III. DISCUSSION

Plaintiff CARE has moved for partial summary judgment on the following issues which are common to all four cases: (1) Defendants' facilities are CAFOs as defined in the Clean Water Act; (2) Defendants' facilities are point sources subject to the NPDES permitting program; (3) Defendants may not discharge manure waste except in accordance with an NPDES permit; (4) The drains, ditches, and canals at issue in this litigation drain into the Yakima River and therefore are considered "waters of the United States" under the CWA; (5) The land application of manure generated at Defendants' facilities in such a manner as to cause runoff into waters of the United States is a part of CAFO operations and is therefore a point source discharge under the CWA; (6) Plaintiff may enforce the effluent limitations contained in Washington's "Dairy Farm National Pollution Discharge Elimination System and State Waste Discharge General Permit"; and, (7) The statute of limitations for purposes of enforcement is five years and 60 days from the date the Complaint was filed.

Defendants Bosma and DeRuyter filed a joint memorandum in opposition of partial summary judgment. (Ct.Rec.84, CY–98–3011–EFS.) Defendants SunnyVeld filed a separate memorandum in opposition, (Ct. Rec.16, CY–98–3022–EFS.) Defendants oppose Plaintiff's Motion in part because it requests advisory rulings which have no significance on material issues.

### 1. *Issues 1–3 & 5: CAFOs, Point Sources, Land Application as Point Source and NPDES Permit*

■ CARE asks the Court to grant summary judgment declaring that the Defendants' facilities, including manure spreading operations outside confinement pens, are Confined Animal Feeding Operations ("CAFOs") and as such are point sources of pollution subject to the NPDES permitting program. That motion is GRANTED in PART and DENIED in part.

"Concentrated animal feeding operation" means an "animal feeding operation which meets the criteria in Appendix B of this part, or which the Director designates under paragraph (c) of this section." 40 C.F.R. § 122.23(b)(3). This includes "animal feeding operations" with more than 700 mature dairy cattle. *See id.* at 122 App. B(a)(2). "Animal feeding operation" means a lot or facility (other than an aquatic animal production facility) where the following conditions are met:

(i) Animals (other than aquatic animals) have been, are, or will be stabled or confined and fed or maintained for a total of 45 days or more in any 12–month period, and

(ii) Crops, vegetation forage growth, or post-harvest residues are not sustained in the normal growing season over any portion of the lot or facility.

40 C.F.R. § 122.23(b)(1).

Plaintiff argues Defendants' dairies meet the statutory definition of CAFOs, SunnyVeld Diary has at least 1700 mature dairy cattle confined and maintained in an area where crops or vegetation are not sustained. DeRuyter Brothers Dairy has at least 3425 mature dairy cattle confined and maintained in an area where crops or vegetation are not sustained. Bosma Dairy had at least 2500 mature dairy cattle confined and maintained in an area where crops or vegetation are not sustained. Liberty Dairy has at least 3000 mature dairy cattle confined and maintained in an area where crops or vegetation are not sustained. WADOE has designated each facility as a CAFO and issued each an NPDES permit. The Defendants meet the statutory definition of CAFO.

■ Pursuant to 40 C.F.R. § 122.23(a), CAFOs "are point sources subject to the National Pollution Discharge Elimination System Permit [(NPDES)]." 40 C.F.R. § 122.23(a). "The term 'point source' means any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrated animal feeding operation, or vessel or other floating craft, from which pollutants are or may be discharged. This term does not include agricultural stormwater discharges and return flows from irrigated agriculture." 33 U.S.C. § 1362(14). The definition of a point source is to be broadly interpreted. *See Dague v. City of Burlington,* 935 F.2d 1343, 1354 (2nd Cir.1991).

The Defendants admit that portions of the dairies are point sources. (Ct.Rec.88.) While Defendant admits that at least a portion of their facilities are point sources, it is important to note the factors that the Director considers if an animal feeding operation does not meet the definition of a CAFO but is a significant contributor to pollution of the waters of the United States. The Director considers the following factors:

(i) The size of the animal feeding operation and the amount of wastes reaching waters of the United States;

(ii) The location of the animal feeding operation relative to waters of the United States;

(iii) The means of conveyance of animal wastes and process waste waters into waters of the United States;

(iv) The slope, vegetation, rainfall, and other factors affecting the likelihood or frequency of discharge of animal wastes and process waste waters into waters of the United States; and

(v)    Other relevant factors.

40 C.F.R. § 122.23(c).

■ It is evident that the very nature of a CAFO and the amount of animal wastes generated by CAFOs constituted such a threat to the quality of the waters of the United States that Congress empowered the Environmental Protection Agency ("EPA") to regulate CAFOs as "point sources" subject to the NPDES permit system. The Defendants dairies generate huge amounts of animal waste each year which must be managed by them. Any discharge of pollutants to the waters of the United States by a CAFO without a NPDES or in violation of its terms violates the CWA. *See* 33 U.S.C. § 1311.

The court notes Defendants are incorrect in asserting that only the area where the animals are confined and the adjacent areas without vegetation can be considered a point source. Congress and the EPA were concerned with the amount of animal wastes generated by a CAFO and the threat those wastes pose to the waters of the United States. Regulation of a CAFO as narrowly defined by Defendants would mean that a CAFO could remove the wastes from the denuded land where the animals are confined and distribute or apply them elsewhere without regard to the potential of those animal wastes to discharge into the waters of the United States. This would avoid the clear intent of Congress as expressed in the CWA and by EPA in its NPDES regulations to insure that the animal wastes produced by CAFOs do not pollute the waters of the United States. That is likely the reason why the definition of "point source", "any discernible, confined and discrete conveyance ... from which pollutants are or may be discharged," is particularly broad. Broad interpretations of "point source" have included manure-spreading vehicles, bulldozers and backhoes. *See e.g., Concerned Area Residents for the Environment v. Southview Farm,* 34 F.3d 114, 115 (2nd Cir.1994); *Avoyelles Sportsmen's League, Inc. v. Marsh,* 715 F.2d 897, 922 (5th Cir.1983) (interpreting point source to include bulldozers and backhoes); *United States v. Tull,* 615 F.Supp. 610, 622 (E.D.Va.1983) (same); *United States v. Weisman,* 489 F.Supp. 1331, 1337 (M.D.Fla.1980) (interpreting point source to include manure spreading vehicles).

■ The agricultural stormwater discharge and return flows from irrigated agriculture exception in 33 U.S.C. § 1362(14) does not act to relieve CAFO farmers from responsibility for over applications and misapplications of CAFO animal wastes to fields in amounts or locations which will then discharge into the waters of the United States. The instruments or machinery used to apply those animal wastes will be considered "point sources" under the CWA. For example, trucks filled with animal wastes at the animal confinement area which apply those animal wastes to crop production fields in mounds close to the "waters of the United States" would be considered "point sources" and discharges to the waters of the United States from those mounds due to that misapplication would be discharge violations subject to the CWA. Enforcement of the CWA does not stop at the edge of the animal confinement area.

■ Based on the admissions of the Defendants and the acts and regulations related to NPDES permits, the Court declares that the Defendants dairies are CAFOs and as such, are point sources subject to the NPDES permit requirement and can not discharge animal wastes either without a NPDES permit or in violation of such a permit. The Defendants CAFOs include not only the ground where the animals are confined but also the lagoons and systems used to transfer the animal wastes to the lagoons as well as equipment which distributes and/or applies the animal wastes produced at the confinement area to fields outside the animal confinement area. To that extent, the Court grants CARE's Motion for Partial Summary Judgment. However, there re-

main genuine issues of material fact regarding the extent to which the Defendants lands, the operation of the facilities and the actions of manure-spreading equipment are point sources. These are questions of fact for trial. *See Southview Farm,* 34 F.3d 114.

## 2. *Issue 4: "Waters of the United States"*

■ CARE asks this Court to declare that the drains, ditches and canals at issue in this litigation drain into the Yakima River and therefore are considered "waters of the United States" under the CWA. *See* 33 U.S.C. §§ 1311(a), 1362(12) & 1362(7). After reviewing the pleadings produced by the parties, this Court believes that there are genuine issues of material fact regarding this important subject which must be the subject of testimony at trial. At the time this Motion for Summary Judgment was argued, two irrigation districts in the State of Washington had filed a petition seeking status as amici curiae. (Ct.Rec.75.) Their petition to intervene was granted and they were allowed to offer briefing on the subject of what constitutes "waters of the United States". (Ct.Rec.122.) The Court will review the briefing of the amici on this issue. At this time, however, issues of fact exist which preclude a grant of summary judgment.

## 3. *Issue 6: Effluent Limitations in Washington's "Dairy Farm National Pollution Discharge Elimination System and State Waste Discharge General Permit"*

■ CARE also asks this Court to declare that it can enforce the effluent limitations contained in Washington's "Dairy Farm National Pollution Discharge Elimination System and State Waste Discharge General Permit." Defendants respond that there is no such private right of enforcement for those laws, citing *Miotke v. City of Spokane,* 101 Wash.2d 307, 678 P.2d 803 (1984). *Miotke* contains one sentence, in dicta, on the subject. "Although the WPCA contains provisions authorizing the State to recover damages and civil penalties for violations of waste discharge permit requirements (RCW 90.48.142, .144), it does not provide for a private cause of action." Since the Washington Supreme Court held in *Miotke* that the plaintiffs had a cause of action for nuisance resulting from the discharge of raw sewage into a river and did not hold citizens can not enforce State General Dairy Permits, the Court finds *Miotke* unpersuasive. *See id.* at 330, 678 P.2d at 816. This Court finds persuasive the holding in *Northwest Environmental Advocates v. City of Portland,* 56 F.3d 979 (9th Cir.1995). On this very subject, the court stated,

> The plain language of CWA § 505 authorizes citizens to enforce all permit conditions. That section provides; '[A]ny citizen may commence a civil action ... (1) against any person ... who is alleged to be in violation of (A) an effluent standard or limitation under [the Clean Water Act] ...' 33 U.S.C. § 1365(a)(1)(A). An effluent standard or limitation includes '(2) an effluent limitation or other limitation under section 1311 ... or (6) a permit or condition thereof....' 33 U.S.C. § 1365(f)(2), (f)(6) (emphasis added). This language clearly contemplates citizen suits to enforce 'a permit or condition thereof.'

*Id.* at 986. Accordingly, this Court declares that CARE can enforce the effluent limitations contained in Washington's "Dairy Farm National Pollution Discharge Elimination System and State Waste Discharge General Permit" and grants CARE's Motion for Summary Judgment on that issue.

## 4. *Issue 7: Statute of Limitations*

■ Finally, CARE asks this Court to declare that the statute of limitations for the causes of actions it has brought is five years back from the filing of the complaint, plus 60 days for the tolling of the Notice of Claim. Since Defendant SunnyVeld Dairy

 

asserted the statute of limitations as an affirmative defense, the Court will rule on this issue. (Ct.Rec.15.)

■ The general federal five-year statute of limitations period applies to citizen actions seeking enforcement of civil penalties under the Clean Water Act. *See* 28 U.S.C. § 2462; *Sierra Club v. Chevron, USA, Inc.,* 834 F.2d 1517, 1521 (9th Cir. 1987). Furthermore, the statute of limitations includes an additional 60 days from the date of the Notice of Claim based upon the CWA's 60–day pre-suit notice requirement. *See Chevron,* 834 F.2d at 1523. The 60–day waiting period is to allow the parties to attempt conciliation of the claims in the Notice. During this time, the statute of limitations is tolled. If the 60th day of that waiting period falls on a Saturday, Sunday or legal holiday, then the period does not end until the close of business of the next business day. *See* Fed.R.Civ.P. (6)(a). In the typical tort case with a 60–day pre-suit filing period, plaintiffs would start with the date of the alleged tort and count forward to determine the last day on which the complaint must be filed. In contrast, in these CWA cases, CARE waited several weeks following the 60–day period to file suit. As a result, CARE is limited to those claims for discharge violations, if any, within five years and 60 days back from the filing of the complaints.

### IV. CONCLUSION

Based on the record, the Court GRANTS Plaintiff's Motion for Partial Summary Judgment on all issues by the terms set out in this Order, save Issue 4. Material facts exist which preclude a grant of summary judgment on Issue 4. Accordingly,

**IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Partial Summary Judgment (Ct.Rec.61, CY–98–3011–EFS) for all four CARE/dairy cases is **DENIED in PART.** Issue 4: "waters of the United States" is **DENIED** because issues of material fact exist which preclude summary judgment.

2. Plaintiff's Motion for Partial Summary Judgment (Ct.Rec.61, CY–98–3011–EFS) for all four CARE/dairy cases is **GRANTED in PART.** All other issues (1–3, 5–7) are **GRANTED** in accordance with this Order.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this order and to provide copies to counsel.