**IDAHO CONSERVATION LEAGUE, Plaintiff,**

v.

**Adrian BOER, dba K & W Dairy, Defendant.**

**No. CV–04–250–S–BLW.**

United States District Court, D. Idaho.

Sept. 27, 2004.

Lauren M. Rule, William M. Eddie, Boise, ID, for Plaintiff.

Debora K. Kristensen, Boise, ID, for Defendant.

Lisa J. Kronberg, Esq., Boise, ID, for amicus.

## MEMORANDUM DECISION AND ORDER

WINMILL, Chief Judge.

### INTRODUCTION

The Court has before it a motion to dismiss filed by defendant. The Court heard oral argument on the motion on September 21, 2004, and took the motion under advisement. As explained below, the Court will construe the motion as a motion for summary judgment and will deny the motion.

### FACTUAL BACKGROUND

In this lawsuit, plaintiff Idaho Conservation League (ICL) claims that defendant Adrian Boer, doing business as K & W Dairy, must obtain a permit under the Clean Air Act (CAA), and Idaho's State Implementation Plan, before he can begin

construction and operation of the K & W Dairy. Boer seeks dismissal of the suit on the ground that as a matter of law, he is not subject to the CAA and hence does not need to obtain a permit.

On October 1, 1999, Boer obtained a siting permit from Gooding County authorizing him to construct a dairy for up to 6,600 animal units near Jerome.[1] On April 11, 2001, Boer started construction on the dairy's lagoon. Shortly thereafter, legal challenges were filed to the dairy's construction in Idaho state court that ultimately were resolved in Boer's favor.

On August 19, 2003, ICL notified the Idaho Department of Environmental Quality (IDEQ) that Boer had violated the CAA by failing to obtain a Permit–to–Construct (PTC). The IDEQ responded in a letter dated October 30, 2003, stating as follows:

> Generally speaking, if the potential to emit from the stationary source or sources is greater than 100 tons per year of any regulated air pollutant, a PTC is required. Based on available information for the ... K & W Dairy, it appears that stationary source emissions from [this facility] will be below these levels, but it is incumbent upon the owner or operator to make this determination.

On January 9, 2004, ICL notified Boer of its intent to sue under the CAA, and then filed this suit on May 26, 2004. ICL's complaint asserts that the dairy "will have the capacity to produce emissions of ammonia, hydrogen sulfide and [particulate matter 10 microns in diameter or smaller] in amounts greater than 100 tons per year." *See Complaint* ¶ 36 at p. 11.

These potential emissions, ICL alleges, trigger a requirement in the CAA that Boer obtain a PTC before beginning construction and operation of the dairy.

Boer responded by filing what the Court will construe as a motion for summary judgment.[2] Boer argues that (1) ammonia and hydrogen sulfide are not part of Idaho's SIP, enforceable in a CAA citizen suit, but instead are toxins wholly regulated by the State, and hence outside both the CAA and this Court's subject matter jurisdiction; (2) the complaint is barred by the statute of limitations; (3) ICL failed to exhaust its administrative remedies; (4) ICL is improperly aggregating potential emissions from the entire dairy rather than identifying discrete sources of emissions; and (5) ICL is ignoring the IDEQ's interpretations of its own regulations. The Court will consider each of these arguments below.

## ANALYSIS

### 1. *Overview of CAA*

The CAA requires the EPA to promulgate health-based standards for certain air pollutants. These standards are called the National Ambient Air Quality Standards (NAAQS). *See* 42 U.S.C. § 7409(a), (b). Each state is required under the CAA to adopt a State Implementation Plan (SIP) to satisfy the NAAQS requirements. *See* 42 U.S.C. § 7410(a)(1). Specifically, each state is mandated under § 7410(a), to adopt a "plan which provides for implementation, maintenance, and enforcement" of the ambient air quality standards and to submit its SIP to the EPA for approval.

---

**1.** Boer has stated in his affidavit that he is constructing only a 3,720 cow dairy rather than the larger dairy authorized by his siting permit. *See Affidavit of Boer,* ¶ 21 at p. 5.

**2.** The parties had no objection to the Court's statement at oral argument that the motion be converted to a motion for summary judgment. The issues resolved by this decision are all legal in nature, concerning the interpretation of regulatory language.

"By virtue of the States' roles in devising a strategy and adopting an implementation plan, ... '[i]t is to the States that the [CAA] assigns initial and primary responsibility for deciding what emissions reductions will be required from which sources.'" *Hall v. EPA*, 273 F.3d 1146, 1153 (9th Cir.2001) (quoting *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 470–72, 121 S.Ct. 903, 149 L.Ed.2d 1 (2001)). The EPA examines the SIPs to determine if they include enforceable emission limitations and other control measures necessary to attain the NAAQS, as well as timetables for compliance. 42 U.S.C. § 7410(a)(2)(A). A SIP, "once adopted by a state and approved by the EPA, becomes controlling and must be carried out by the state." *Bayview v. Metropolitan*, 366 F.3d 692, 695 (9th Cir.2004). The EPA approved Idaho's SIP plan on January 16, 2004. *See* 40 C.F.R. 52.679.

■ Approved SIPs are enforceable by either the State, the EPA, or via citizen suits brought under § 304(a) of the CAA. *Bayview*, 366 F.3d at 695; 42 U.S.C. § 7604(a).[3] On the other hand, state agencies "have exclusive authority to take enforcement action with respect to violation of state laws and regulations that are not part of a federally approved program." 3 Gerrard, *Environmental Law & Practice* § 17.13[2][a] at p. 17–360 (2004).

Thus, if ICL is seeking to enforce state regulations that were not included in the SIP, this Court lacks jurisdiction to hear their complaint. If, on the other hand, the state regulations sought to be enforced are included in Idaho's SIP, this Court clearly has jurisdiction to hear ICL's claims under the CAA. This threshold issue must be resolved first, since it goes to the Court's subject matter jurisdiction. *Steel Company v. Citizens For a Better Environment*, 523 U.S. 83, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998).

### 2. *Idaho's SIP*

■ ICL claims that it is seeking to enforce Idaho's SIP, and claims that Boer must obtain a PTC pursuant to Rule 201[4] before he can construct and operate the dairy. Rule 201 of Idaho's SIP requires a PTC for the construction or operation "of any stationary source, facility, major facility, or major modification ... unless the source is exempted ...." ICL claims that the dairy is a "stationary source" or "facility" within the terms of Rule 201, and does not fall within any exemption.

A stationary source is defined as "[a]ny building, structure, emissions unit or installation which emits or may emit any air pollutant." Rule 103. A facility is defined as "[a]ll of the pollutant-emitting activities which belong to the same industrial grouping ...." Rule 006.037.

These definitions require that there be emissions of an air pollutant. The term "emissions" is defined as "[a]ny controlled or uncontrolled release or discharge into the outdoor atmosphere of any air pollutants or combination thereof." Rule 006.30. The term "air pollutant" is defined to include "[a]ny substance, including, but not limited to, dust, fume, gas, mist, odor, smoke, vapor, pollen, soot, carbon, or particulate matter or any combination thereof." Rule 006.04.

---

**3.** With regard to citizen suits, § 304 of the CAA gives citizens the authority to "commence a civil suit against any person ... who is alleged to have violated ... an emission standard or limitation under this chapter." The phrase "emission standard or limitation" is defined in 42 U.S.C. § 7604(f)(4) to include "any applicable State implementation plan approved by the [EPA]."

**4.** These regulations are contained in the Idaho Administrative Code, at § 58.01.01 *et seq.* To avoid lengthy citations, the Court will drop the 58.01.01 and refer to the Rules by their last three digits and any sub-parts.

These definitions, when read together, would label the K & W Dairy as a "stationary source" or "facility" if activities at the Dairy will release into the outdoor atmosphere any dust, gas, odor, particulate matter, or combination thereof. ICL alleges in its complaint that the Dairy will release into the outdoor atmosphere more than 100 tons per year of ammonia, hydrogen sulfide, and particulate matter. Particulate matter is specifically included in the term "air pollutant" while ammonia and hydrogen sulfide clearly come within the terms "gas" and "odor."

Discovery has not yet begun in this case, and hence ICL cannot yet be required to prove these allegations. Boer responds, however, that Rule 201 does not require a PTC for exempt activities, and that he is entitled as a matter of law to an agricultural exemption.

The exemption sought by Boer covers "agricultural activities" that would not "equal or exceed one hundred (100) tons per year of any regulated air pollutant." Rules 220, 222.02(f). The term "regulated pollutant" is defined to include "[1][a]ny pollutant for which a national ambient air quality standard [NAAQS] has been promulgated [and] ... [2][a]ny air pollutant listed in Sections 585[and] 586 ...." Rules 006.82.(b) & (f).

It is undisputed that a NAAQS has been promulgated for certain types of particulate matter [5], and that ammonia and hydrogen sulfide are listed in Section 585. ICL alleges in its complaint that Dairy activities will emit into the outdoor atmosphere more than 100 tons per year of the regulated pollutants of ammonia, hydrogen sulfide, and particulate matter. Thus, ICL has stated a claim that the agricultural exemption does not apply to the Dairy.

· ■ Boer takes issue with this analysis on a number of grounds. First, Boer

claims that the EPA must have made a mistake when it approved the definition of "regulated air pollutant" to include those pollutants listed in sections 585 and 586. Boer points out that the EPA, in approving Idaho's SIP, specifically excluded sections 585 and 586 from its approval. Thus, Boer argues, the EPA's approval of the definition of "regulated air pollutant" to include sections 585 and 586 must have been inadvertent and therefore should be disregarded.

■ It is a well-established principle of statutory construction that "[a] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant, and so that one section will not destroy another unless the provision is the result of obvious mistake or error." *In re Catapult Entertainment Inc.*, 165 F.3d 747, 751 (9th Cir.1999) (quoting 2A Singer, *Sutherland Statutory Construction*, § 46.06 (5th ed.1992)). This standard raises the issue whether there was an "obvious mistake or error" in the EPA's approval of the definition of "regulated air pollutant" so that the Court should disregard the inclusion of sections 585 and 586 in that definition.

There would be an obvious mistake if the EPA's exclusion of these two sections could not be read harmoniously with its separate approval of the same two sections. At first glance, the harmony is hard to find—exclusion and approval seem inherently contradictory.

On closer inspection, however, the EPA's actions make sense. Sections 585 and 586 are part of a series of regulations by which Idaho controls the emission of certain listed "toxic air pollutants." These two sections set various emission levels and acceptable ambient concentrations for

---

**5.** The NAAQS regulations are set forth in 40 C.F.R. part 50.

a long list of carcinogenic and non-carcinogenic "toxic air pollutants." The emission levels are expressed in terms of pounds-per-hour while the ambient concentrations are expressed in terms of milligrams-per-cubic-meter of air.

Other regulations in this series require that applicants demonstrate, before beginning construction, that they are not violating the emission levels and ambient concentrations. *See* Rules 203.3; 210. Exemptions from these requirements regarding "toxic air pollutants" are set forth in Rule 223.

The EPA specifically excluded these "toxic air pollutant" regulations from Idaho's SIP. *See* 40 C.F.R. § 52.679. By specifically excluding these sections (including sections 585 and 586) from the SIP, the EPA turned over to the state of Idaho the responsibility for enforcing the listed emission and ambient concentration levels.

The EPA did not take any action inconsistent with this exclusion when it approved the definition of "regulated air pollutant." The approval only incorporated the pollutants listed in sections 585 and 586; the approval did not incorporate the emission levels and ambient concentrations. Thus, it had no effect on the EPA's turn-over of enforcement authority accomplished by the exclusion.

In essence, the definitional approval simply identified the list of pollutants that would be considered in determining whether the PTC exemptions applied, specifically those exemptions based on whether the activity emitted 100 tons of a pollutant per year. Reading the approval together with the exclusion reveals that the EPA will not be enforcing the pound-per-hour emission levels and milligram-per-cubic-meter ambient concentrations for the listed toxins, but retains oversight of activities that may be emitting 100 tons per year of these toxins. There is nothing irrational about

the EPA's continued interest in the "heavy hitters," *i.e.*, the potentially large emitter.

Thus, the approval is consistent with the exclusion. For that reason, the incorporation of sections 585 and 586 in the definition of "regulated air pollutant" cannot be disregarded. Since section 585 lists ammonia and hydrogen sulfide, both of those pollutants must be considered in calculating whether the Dairy is entitled to the agricultural activity exemption of Rule 220. The Court therefore rejects Boer's argument that ammonia and hydrogen sulfide do not count for purposes of determining whether Rule 220's agricultural exemption applies to Boer's Dairy.

■ The Court recognizes that this interpretation contradicts IDEQ's interpretation of its own regulations. Ordinarily, this Court must grant substantial deference to such interpretations. *Idaho Department of Health and Welfare v. United States Dept. of Energy*, 959 F.2d 149, 152 (9th Cir.1992). However, no deference is due when the IDEQ's interpretation cannot be reconciled with the plain language of the regulations. *Id.*

■ The IDEQ argues that the Court's interpretation improperly "creates federally enforceable toxic air rules." *See Amicus Brief of IDEQ* at p. 10. The Court disagrees. As explained above, the EPA did not take over enforcement of Idaho's toxic air rules when it approved the definition of "regulated air pollutant." It simply listed the pollutants that would be considered in determining whether PTC exemptions would apply. The IDEQ cites no authority that the EPA was acting beyond its authority in making such a distinction. The Court therefore grants no deference to the IDEQ's interpretation.

The IDEQ also asserts that fugitive emissions should not be counted in determining whether the 100 ton limit is met for

PTC exemption purposes. . The IDEQ notes that ICL's complaint identifies the particulate matter that will be emitted by the dairy as being composed of "dust and animal dander." These types of particulates, the IDEQ argues, are fugitive emissions that cannot be counted in determining if the dairy is emitting 100 tons of a "regulated air pollutant."

Once again, the IDEQ's interpretation has no basis in the plain language of the regulations. The definition of "regulated air pollutant," as discussed above, includes certain types of particulate matter covered by a NAAQS. The IDEQ cites the Court to no authority holding that dust and animal dander cannot as a matter of law ever fall within the terms of a NAAQS covering particulate matter.[6]

The definition of "regulated air pollutant" contains no exclusion for fugitive emissions, which are defined as "[t]hose emissions which could not reasonably pass through a stack, chimney, vent, or other functionally equivalent opening." Rule 006.43. While IDEQ could have drafted regulations excluding fugitive emissions from the definition of "regulated air pollutant," it did not do so, and the Court cannot re-write the regulations.[7]

### 3. *Aggregation*

■ Boer argues that ICL has failed to identify discrete sources of pollution emission on his dairy. He asserts that it is improper to aggregate all emissions from the dairy in calculating whether the 100

ton limit has been met for purposes of the agricultural activity exemption.

The exemption under Rule 220 "may be used by owners or operators to exempt certain sources from the requirement to obtain a[PTC]." The Rule goes on to define "sources" as the "equipment or activity being exempted." In this case, the activity being exempted is "agricultural activities" as set forth in Rule 220.02(f). The term "agricultural activities" is defined in Rule 007.02 to include "the usual and customary activities ... of raising livestock for use and consumption."

To bring this full circle, Rule 220 allows owners to exempt certain "sources," which include "agricultural activities" defined very broadly to include "the usual and customary activities of raising livestock." Boer would define the word "source" very narrowly to include only discrete emission sources—presumably such as barns, sheds, lagoons, etc.—that could not be aggregated and must be considered separately. However, as seen from a review of the regulatory language above, Boer's definition is unduly restrictive. In fact, a "source" is defined quite broadly. Just how broadly, the Court need not determine. It is enough to hold at this early stage of the litigation that ICL's complaint should not be dismissed for failing to be more precise in identifying sources of pollution emission at the Dairy. The Court will leave for future resolution just how precise ICL must be to ultimately prevail.

6. The NAAQS for particulate matter sets standards for particulate matter with an aerodynamic diameter less than or equal to a nominal 10 micrometers, and for particulate matter with an aerodynamic diameter less than or equal to a nominal 2.5 micrometers. 40 C.F.R. §§ 50.6, 50.7. There is no evidence before the Court that dust and animal dander could not, as a matter of law, ever fall within these NAAQS regulations.

7. IDEQ's complaint that the Court's interpretation will result in a much greater workload for the agency is certainly a legitimate factor to take into account in re-drafting the regulations, but is not a factor for this Court to consider in interpreting the plain language of the regulations.

#### 4. *Statute of Limitations*

■ Boer argues that a two-year statute of limitations applies. The Court disagrees. If a statute of limitations is applicable, it is the five-year statute set forth in 28 U.S.C. § 2462. *See Sierra Club v. Chevron U.S.A. Inc.*, 834 F.2d 1517 (9th Cir.1987) (applying this statute in analogous Clean Water Act case).

The qualifying language in the preceding sentence is intended to emphasize that the Court is not holding that the five-year statute applies here, but only that the two-year statute does not apply. The reason for the Court's qualification is that the IDEQ has a persuasive argument that PTC violations are ongoing and not subject to a statute of limitations analysis. That issue, however, need not be resolved since it is only necessary here to hold that the two-year statute does not apply.

#### 5. *Exhaustion*

■ Boer argues that ICL has failed to exhaust its administrative remedies. According to Boer, ICL should have appealed the IDEQ's rejection of its claim in the letter dated October 30, 2003. However, the very agency whose decision Boer says must be appealed—IDEQ—says there was nothing to appeal: "[IDEQ's] advisory letter ... does not constitute an agency action that can be appealed by an administrative contested case." *See Brief of IDEQ* at pp. 12–13. The Court agrees. The letter did not rise to the level of an order or official determination of any kind, and hence triggered no exhaustion requirement.

#### 6. *Conclusion*

ICL is alleging violations of the Idaho SIP and thus this Court has subject matter jurisdiction of this case under the CAA. Ammonia, hydrogen sulfide, and particulates including dust and animal dander are "regulated air pollutants" that count toward the calculation of the 100 ton limit set forth in the agricultural activity exemption of Rule 220. The allegations of ICL's complaint are sufficiently detailed. The Court will reject Boer's statute of limitations and exhaustion defenses. For all of these reasons, the Court will deny Boer's motion for summary judgment.

#### ORDER

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the motion to dismiss (docket no. 6), construed as a motion for summary judgment, is DENIED.